FIFTH DIVISION

No. 1-08-1061

| | | |
|---|---|---|
| RICHARD P. CARO, a State of Illinois Taxpayer on Behalf of and for the Benefit of the State of Illinois, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee | ) ) | |
| (Ronald Gidwitz and Gregory Baise, | ) ) | |
| Plaintiffs-Intervenors-Appellees), | ) ) | |
| v. | ) ) | No. 07 CH 34353 |
| HONORABLE ROD BLAGOJEVICH, Governor of the State of Illinois, THE ILLINOIS DEPARTMENT OF HEALTHCARE AND FAMILY SERVICES, BARRY S. MARAM, Director of IDHFS, | ) ) ) ) ) | |
| Defendants-Appellants | ) ) | |
| (The Department of Public Health, Damon Arnold, Director, and Daniel W. Hynes, Comptroller, | ) ) ) | |
| Defendants; | ) ) | |
| Gregory Jacaway *et al*., Individually and on Behalf of All Similarly Situated People, | ) | |
| Defendants-Intervenors; | ) ) | |
| The State of Illinois, | ) ) | The Honorable James R. Epstein, |
| Intervenor). | ) | Judge Presiding. |

No. 1-08-1061

PRESIDING JUSTICE FITZGERALD SMITH delivered the opinion of the court:

Plaintiff-appellee Richard P. Caro, a State of Illinois taxpayer, joined by plaintiffs-intervenors-appellees Ronald Gidwitz and Gregory Baise (collectively, plaintiffs), moved the trial court for a preliminary injunction against defendants-appellants Governor of Illinois Rod Blagojevich, the Illinois Department of Healthcare and Family Services, and Director Barry S. Maram (defendants or as named), as well as defendants the Illinois Department of Public Health, Director Damon Arnold, and Comptroller Daniel W. Hynes,[1] to prohibit them from expanding, funding and operating a healthcare program as violative of statutory law and the Illinois Constitution. The trial court granted plaintiffs' request and imposed the injunction. In this interlocutory appeal, defendants contend that the trial court erred in its decision to grant the injunction and failed to balance equitable factors which support its denial. Defendants ask that we overturn the trial court's issuance of the injunction, uphold the validity of their healthcare program, and grant any other proper relief.

We note for the record that plaintiff Caro filed a *pro se* appellee brief in this matter in addition to joining in the separate brief filed by his coplaintiffs/intervenors Gidwitz and Baise. Gregory Jacaway filed an appearance on his behalf and on that of all others similarly situated as defendants-intervenors, but did not file a brief in this cause. Also, the State of Illinois, via the office of the Attorney General, filed a brief in its capacity as an intervenor, and the National Federation of Independent Business filed an *amicus* brief.

For the following reasons, we affirm.

_____

[1]These defendants have not participated in the instant appeal.

2

BACKGROUND

The principal facts involved in this cause are not in dispute.

In 1997, the federal government enacted the State Children's Health Insurance Program (SCHIP), which sought to provide health insurance to children whose families could not afford private insurance but who likewise did not qualify for Medicaid. Illinois participated in this program by enacting its own version pursuant to a statute entitled the Children's Health Insurance Program Act (CHIPA), to be run by defendant the Department of Healthcare and Family Services (DHFS). In return, Illinois received a 65% federal match in funds expended for CHIPA coverage, compared to only a 50% federal match in funds expended for Medicaid coverage.

In 2001, the federal government permitted Illinois to submit waivers to obtain federal funds and extend health insurance coverage to the parents/caretakers of those children enrolled in CHIPA. Illinois did so, the federal government approved it, and the FamilyCare Program was created pursuant to the Illinois Administrative Code (89 Ill. Adm. Code §120.32, amended at 29 Ill. Reg. 820, eff. January 1, 2005). Under this program, DHFS was able to expand CHIPA-like health insurance coverage to eligible adults--again, those whose family income exceeded the maximum allowed for eligibility under Medicaid but could not afford private health insurance. Initially, Illinois set the eligibility requirement to receive coverage under the FamilyCare Program at 49% of the federal poverty limit (FPL); that is, those adults whose income was at 49% of the FPL were eligible for health insurance under the program. Through the years, this level was increased, reaching 185% of the FPL in January 2006.

By 2007, the scope of the federal SCHIP program became uncertain as the United States

3

Congress and the President could not agree on funding or the breadth of coverage, and SCHIP

and its accompanying state waivers were set to expire (pending extension attempts) in December

2007. This jeopardized the 65% federal funding match for state programs such as Illinois'

CHIPA covering children and the FamilyCare Program covering adults. In an effort to preserve

at least the 50% federal match Illinois received under Medicaid, DHFS declared on November 7,

2007, that an emergency existed warranting the promulgation of an "Emergency Rule" pursuant

to the Public Aid Code, which governs Medicaid in Illinois. The Emergency Rule sought to not

only preserve FamilyCare Program coverage at the levels already in place, but also insisted on

the further expansion of coverage, via Medicaid, to adults with incomes up to and including

400% of the FPL (*i.e.*, an income of $83,000 per year for a family of four), who would pay

varying premiums for coverage received depending on their incomes. For this expansion to

Medicaid and increase in percentage, DHFS relied on section 5-2(2)(b) of the Illinois Public Aid

Code (305 ILCS 5/5-2(2)(b) (West 2006)), which permits the provision of medical assistance for

all people who would be determined eligible for basic maintenance under the "Temporary

Assistance for Needy Families" (TANF) article of the Public Aid Code (305 ILCS 5/4-0.5 *et seq.*

(West 2006)) by disregarding the maximum earned income permitted by federal law. Defendant

Governor Blagojevich approved the expansion, and DHFS submitted the Emergency Rule and

supporting documentation, along with a "Permanent Rule" to the same effect, to the Joint

Committee on Administrative Rules (JCAR) in accordance with emergency rule-making

procedures under the Illinois Administrative Procedure Act (5 ILCS 100/1-1 *et seq.* (West

2006)).

After review, JCAR objected to and suspended DHFS' Emergency Rule, finding that no emergency situation existed warranting adoption of the proposed rule and that the rule was not in the public's interest; JCAR effectively suspended and invalidated the Emergency Rule and the FamilyCare Program it created. Accordingly, the Illinois Secretary of State issued a filing to this effect, prohibiting implementation of the Emergency Rule. DHFS, however, enacted the Emergency Rule and began enrolling adults with incomes up to 400% of the FPL into Medicaid.

Plaintiffs filed suit against defendants, challenging the expansion of the FamilyCare Program on several grounds, including the lack of authority to collect premiums under Medicaid, the lack of constitutional authority to raise revenue, the lack of authority to expand the FPL eligibility percentage to 400%, the lack of an appropriation for the expansion, and the suspension of the Emergency Rule by JCAR. Plaintiffs sought to enjoin defendants from further implementing the FamilyCare Program.

While plaintiffs' cause was pending, DHFS' Permanent Rule came before JCAR. Again, JCAR found it to be contrary to public interest and prohibited defendants from implementing the FamilyCare Program, and again, the Illinois Secretary of State issued a filing to this effect. However, defendants continued to enroll adults with incomes up to 400% of the FPL into Medicaid.

In April 2008, the trial court held a hearing on plaintiffs' motion for preliminary injunction. In its memorandum opinion and order, the court focused principally on defendants' reliance on section 5-2(2)(b) of the Public Aid Code as the authority for their actions in expanding the FamilyCare Program under Medicaid. The court noted that, as this involves

TANF, the FamilyCare Program would need to meet the eligibility requirements TANF places on its participants. The court examined the FamilyCare Program in light of this and found that, while it meets many of the TANF requirements, it does not meet all of them, particularly that adults be employed or engaged in a job search to be eligible for health insurance coverage. The court then addressed defendants' claim that these requirements do not apply to medical programs such as the FamilyCare Program they had implemented, pursuant to the sanctions provision of the Illinois Administrative Code (89 Ill. Adm. Code §112.79(f), amended at 28 Ill. Reg. 5655, eff. March 22, 2004)). Examining this section, the court noted that the sanctions provision addresses only what penalty may be visited upon a noncompliant recipient of assistance but does not remove the TANF requirements of employment or job search from health care eligibility and, as the FamilyCare Program contains no such requirements, it must fail.

Ultimately, the trial court concluded that "DHFS' authority does not include waiving the TANF requirements enacted by the state legislature" and "[t]herefore, DHFS did not have the authority to move the FamilyCare Program into Medicaid in the manner contemplated by the Emergency Rule." Because the court found this fact to be dispositive, it did not address the other challenges raised by plaintiffs. Accordingly, the trial court granted plaintiffs' motion, finding that they had met the necessary elements for a preliminary injunction against the FamilyCare Program and holding that defendants "are preliminarily enjoined from enforcing the Emergency Rule or expending any public funds related to the FamilyCare Program created by the Emergency Rule."

Following the entry of the injunction, defendants continued to operate the FamilyCare Program. Plaintiffs moved the trial court to issue an order of compliance, and a hearing was

held. At this hearing, defendants told the trial court that they could not provide notice of the injunction to participants or service providers, could not monitor or refund premium payments, could not provide plaintiffs with information regarding where the monies from premium payments were kept and how much remained, could not identify or dis-enroll adult participants, could not send notice to the participants or providers in the program to stop payments and, ultimately, did not know which of the millions of adults enrolled in medical assistance programs were receiving benefits specifically under the FamilyCare Program. Defendants then filed their notice of appeal.

ANALYSIS

To establish entitlement to preliminary injunctive relief, a plaintiff must show (1) a clearly ascertainable right in need of protection, (2) that he will suffer irreparable harm without protection of that right, (3) that there is no adequate remedy at law, and (4) that there is a substantial likelihood of success on the merits of the underlying action. See Mohanty v. St. John Heart Clinic, S.C., 225 Ill. 2d 52, 62 (2006); accord Virendra S. Bisla, M.D., Ltd. v. Parvaiz, 379 Ill. App. 3d 567, 572 (2008). On appeal from the grant of a preliminary injunction, a reviewing court is to " 'examine only whether [the plaintiff] demonstrated a *prima facie* case that there is a fair question concerning the existence of the claimed rights.' " Mohanty, 225 Ill. 2d at 62, quoting People *ex rel.* Klaeren v. Village of Lisle, 202 Ill. 2d 164, 177 (2002). Generally, an abuse of discretion standard of review applies (see Mohanty, 225 Ill. 2d at 63), but where, as here, the trial court's determination regarding the grant of a preliminary injunction involves the interpretation of statutory law, the appropriate standard of review is *de novo*. See Magee v.

7

Huppin-Fleck, 279 Ill. App. 3d 81, 85 (1996); accord ACME-Wiley Holdings, Inc. v. Buck, 343 Ill. App. 3d 1098, 1103 (2003) (where interlocutory appeal presents question of law, *de novo* standard is applied). As the parties agree that this is proper standard, we employ it herein.

As a threshold matter, we wish to address a running comment throughout defendants' brief on appeal. Defendants assert that plaintiffs did not attack the validity of the FamilyCare Program as a whole, "but merely challenged [d]efendants' ability to expand the program to the population with family incomes from 200% to 400% of the FPL" and, thus, the trial court's order enjoining the entire program was beyond the scope of the underlying lawsuit. We find this to be an incorrect mischaracterization of plaintiffs' consistent position in this matter. From a review of plaintiffs' second amended complaint for injunction, it is clear to us that plaintiffs challenged, and continue to challenge, the entire FamilyCare Program as a whole. For example, plaintiffs state therein that they are challenging on constitutional and statutory grounds defendants' implementation of the program. More clearly, though, the trial court's order states that plaintiffs "seek to enjoin the FamilyCare Program," not just a portion of it.

We now turn to the primary issue on appeal, namely, did the trial court err in granting the preliminary injunction on the ground that the FamilyCare Program fails to comply with all of the TANF requirements? It is our view that it did not.

Defendants begin their challenge in this vein by asserting that the FamilyCare Program's connection to TANF requirements "was at most a peripheral issue that was not developed in briefing or oral argument," was "abandoned" by plaintiffs, and resulted in an "unsustainable" and "misguided" basis for the trial court's decision. Defendants argue that it should not have even

played a role in the decision, let alone become the sole basis for the grant of the injunction, because plaintiffs "merely devoted two sentences to the advancement of" the argument regarding TANF requirements, because defendants refuted the argument by pointing to the sanctions provision, and because plaintiffs "did not pursue the issue in their reply brief," so defendants thought it had been conceded. However, plaintiffs discussed the TANF requirements argument at length before the trial court, as exhibited by their second amended complaint and in their opening trial brief. Regardless, by their very assertions here, defendants concede that plaintiffs raised this argument before the trial court--even if it may have only been argued in "two sentences." Contrary to defendants' intimations, plaintiffs were not required to write a dissertation on the issue in their brief before the trial court, nor were they required to mention the issue for a second time in their reply brief, for that court to address the matter or eventually find it to be dispositive. Defendants cite no law, and we find absolutely none, to the effect that plaintiffs' actions constituted an "abandonment" of the issue. Rather, it is clear that plaintiffs adequately raised the issue at the outset of this cause and argued it before the trial court to that court's satisfaction, and defendants' assertions otherwise are wasted words. And, ultimately, we may affirm the judgment of the trial court on any basis appearing in the record. See White v. DaimerChrysler Corp., 368 Ill. App. 3d 278, 282 (2006).

Section 5-2 of the Illinois Public Aid Code (Code) dealing with medical assistance (Illinois' version of Medicaid) states:

> "Classes of Persons Eligible. Medical assistance under this Article
>
> [Article V of the Code] shall be available to any of the following classes of

No. 1-08-1061

persons ***:

*** 

2. Persons otherwise eligible for basic maintenance under Articles

III [Aid to the Aged, Blind or Disabled] and IV [Temporary Assistance for

Needy Families (TANF)] but who fail to qualify thereunder on the basis of

need, and who have insufficient income and resources to meet the costs of

necessary medical care, including but not limited to the following:

***

(b) All persons who would be determined eligible for such

basic maintenance under Article IV [TANF] by disregarding the

maximum earned income permitted by federal law."  305 ILCS

5/5-2(2)(b) (West 2006).

Admittedly and undisputedly, defendants hung the authority for their actions in implementing

and operating the FamilyCare Program upon section 5-2(2)(b).  As noted, that section states that

medical assistance is to be made available to all those otherwise eligible for basic maintenance

under TANF, disregarding the maximum earned income permitted by federal law.  See 305 ILCS

5/5-2(2)(b) (West 2006).  The language of section 5-2(2)(b) is plain and unambiguous.  See

Household Bank, FSB v. Lewis, 229 Ill. 2d 173, 182 (2008); In re Estate of Ellis, 381 Ill. App. 3d

427, 430 (2008)  (primary goal of statutory construction is to follow legislature's intent, which is

best exhibited by statute's plain language; when this is clear, courts must give effect to it and not

depart from it nor read into it limitations or exceptions not expressed therein).  Would-be

10

recipients of medical assistance under this section must be eligible for basic maintenance under the requirements of TANF, with the only exception being their "earned income," which is not to be considered.

Turning, then, to TANF, that article begins by describing its purpose: "to allow the family to become self-sufficient or employed as quickly as possible through *** the provision of transitional assistance to families." 305 ILCS 5/4-0.5 (West 2006). It then describes who is eligible:

> "§ 4-1. Eligibility requirements. Financial aid in meeting basic maintenance requirements for a livelihood compatible with health and well-being shall be given under this Article to or in behalf of families with dependent children who meet the eligibility conditions of Sections 4-1.1 through 4-1.11." 305 ILCS 5/4-1 (West 2006).

Reviewing the eligibility conditions of sections 4.1-4.11 of TANF, and disregarding those that focus on "earned income" as prescribed in section 5-2(2)(b) of the Code, several conditions that must be complied with to receive assistance under TANF still remain, including registration for and acceptance of employment (305 ILCS 5/4-1.8 (West 2006)), participation in educational and vocational training programs (305 ILCS 5/4-1.9 (West 2006)), and acceptance of assignment to job search, training and work programs (305 ILCS 5/4-1.10 (West 2006)). In addition to these, other noneconomic conditions that need to be met before one is eligible to receive assistance under TANF are the enforcement of parental child support obligation if such an obligation exists (305 ILCS 5/4-1.7 (West 2006)), and that a would-be recipient has not been convicted two or

more times of public aid fraud (305 ILCS 5/4-1.5a (West 2006)).

According their own stipulations, defendants concede that the FamilyCare Program does not require its participants to comply with these noneconomic requirements necessary to receive assistance under TANF. As the trial court found, while the FamilyCare Program meets some of the TANF eligibility requirements, it does not meet all of them. The FamilyCare Program, then, is in direct contradiction to the unambiguous language of the Code defendants rely upon to operate it. Essentially, section 5-2(2)(b) extends medical assistance in the name of the FamilyCare Program to those who would otherwise receive assistance under TANF, disregarding only those TANF requirements dealing with earned income. TANF, however, is further limited pursuant to the statute that created it. As we have discussed, to receive assistance under TANF, section 4-1 prescribes that certain requirements must be met. Of these, the requirements listed in sections 4-1.7 through 4-1.10, as well as section 4-1.5a, are noneconomic. According to section 5-2(2)(b), it is clear that FamilyCare Program participants must meet these noneconomic TANF requirements. Yet, as defendants readily admit that the FamilyCare Program does not require this of their participants, an undeniable discrepancy in authority is evident: defendants are operating the FamilyCare Program under the auspices of TANF pursuant to that statute, but are declaring that certain otherwise mandatory TANF eligibility requirements may fall by the wayside. This cannot stand in light of sections 5-2(2)(b) and 4-1 of the Code.

Overall, defendants' reliance on section 5-2(2)(b) for authority to operate the FamilyCare Program suffers from several flaws, primarily that the language of this statutory section in no way supports defendants' operation of their program. Nothing in the wording of section 5-2(2)(b)

authorizes defendants to ignore the TANF requirements, save one: "earned income." This is the only TANF eligibility requirement section 5-2(2)(b) specifically states may be disregarded in extending assistance to those who would otherwise qualify for such under TANF. Plainly and simply, section 5-2(2)(b), which seeks to bring medical assistance under the guise of Medicaid through TANF, does not allow for the waiver of any other TANF eligibility requirement. Nor does this section, or section 4-1 for that matter, discuss any other aspect of the FamilyCare Program defendants have heretofore implemented, including the charging of premiums to those receiving medical assistance under Medicaid or TANF, or anything similar to a 400% of the FPL "cap" as a permissible or appropriate standard to determine eligibility for medical assistance.

Defendants again assert on appeal, as they did before the trial court, that the otherwise mandatory TANF requirements are not required of those receiving medical assistance under the FamilyCare Program pursuant to 112.79 (f) of Title 89 of the Illinois Administrative Code ("sanctions provision") (89 Ill. Adm. Code §112.79(f), amended at 28 Ill. Reg. 5655, eff. March 22, 2004). As did the trial court, we disagree with this argument.

The sanctions provision outlines the sanction or penalties that may be imposed upon participants of TANF who fail to meet TANF's work and employment requirements. See 89 Ill. Adm. Code §112.79(a), amended at 28 Ill. Reg. 5655, eff. March 22, 2004. It describes, for example, what actions merit a sanction (subsection (b)), what type of sanction will be imposed (subsection (a)), notice requirements (subsections (c) and (e)), and the ability to rectify a sanction (subsection (h)). The subsection relied upon by defendants here states, in pertinent part:

"(f) A sanction under this Section shall not affect receipt of Medical Assistance."

No. 1-08-1061

89 Ill. Adm. Code §112.79(f), amended at 28 Ill. Reg. 5655, eff. March 22, 2004. While defendants are correct that subsection (f) expressly prohibits a sanction to interfere with medical assistance received, they ignore the fact that this section applies to those already receiving assistance under TANF. The sanctions provision specifically covers what penalties will be imposed upon recipients of TANF aid who fail to satisfy the TANF requirements outlined in Article IV of the Code, namely, a reduction in the percentage of benefits received for each violation save any benefit involving medical assistance. See 89 Ill. Adm. Code §§112.79(a), (f), amended at 28 Ill. Reg. 5655, eff. March 22, 2004. Neither the sanctions provision nor its subsection (f) applies to anyone other than TANF participants. That is, it does not apply to those attempting to become eligible to receive TANF, but only to those who already receive TANF aid; as the trial court determined, subsection (f) "presupposes" that the one to whom the sanction provision applies has already been declared eligible for and has been receiving TANF assistance, but has become a noncompliant recipient. It is only then--when the TANF recipient has become noncompliant--that the sanctions provision comes into play. It does not, as defendants argue, somehow remove the TANF requirements of job search and employment from TANF eligibility or preserve the receipt of medical assistance for those who otherwise do not meet the initial requirements to receive TANF in the first instance. Were this so, there would be no need for any sort of sanctions provision because there would be no limits upon receiving TANF assistance. Accordingly, we find that defendants' reliance on subsection (f) of the sanctions provision does not support their cause here.

Finally, defendants argue that the preliminary injunction issued by the trial court must be

14

reversed because the court did not balance the equitable factors raised in this cause which, in defendants' opinion, "overwhelmingly weigh in favor of denial" of the injunction. Again, we disagree.

First and foremost, it is clear to us that the trial court did indeed weigh the equitable factors presented in this cause. In fact, the court went so far as to make note of them in its memorandum opinion and order granting the preliminary injunction. As we too set forth earlier, the trial court commented in the first sentence of the analysis portion of its decision that, in order to grant plaintiffs' motion for preliminary injunction against defendants, it was required to find that plaintiffs have an ascertainable right in need of protection, that this right is being irreparably harmed with no adequate legal remedy, and that there is a likelihood of success on the merits of plaintiffs' claim. Therefore, the trial court recognized at the outset that a balance of factors was necessary to reach its decision. Moreover, after discussing its decision to grant the injunction, the court thoroughly explained in a concluding paragraph to its order that:

> "There is a clearly ascertainable right in need of protection asserted in
> Plaintiffs' claim, namely the unauthorized expansion of Medicaid improperly
> using tax dollars. The harm alleged is irreparable and inadequate at law because it
> would be impracticable for the State to recoup the costs expended for the benefit
> of the FamilyCare Program. There exists a likelihood of success on the merits of
> Plaintiff's claims with respect to the FamilyCare Program for the reasons
> explained above."

While the trial court may not have listed in written form all the potential equitable factors present

No. 1-08-1061

in this cause, it is obvious, from its memorandum opinion and order, that it inherently conducted a balancing of these factors in arriving at its ultimate decision. See, *e.g.*, Stacke v. Bates, 138 Ill. 2d 295, 308-09 (1990) (in reaching decision whether to grant stay pending appeal, trial court "of necessity" was engaged in balancing process as to rights of parties and consideration of equitable factors).

Second, we note again that we as a reviewing court are, on appeal from the grant of a preliminary injunction, to examine only whether plaintiffs demonstrated a *prima facie* case that there is a fair question concerning the existence of the right they claim is being irreparable harmed. See Mohanty, 225 Ill. 2d at 62; accord Village of Lisle, 202 Ill. 2d at 177. Based on the record before us, we are convinced that plaintiffs have done so here. Defendants have attempted to move a group of people formerly covered under the Illinois SCHIP program (those with incomes under 185% of the FPL) and a group of people never covered under any Illinois assistance program (those with incomes up to 400% of the FPL) into Medicaid via the auspices of TANF. Yet, receipt of Medicaid, and in particular assistance received through TANF, has always been intended to be temporary and transitional, *i.e.*, to aid families in becoming self-sufficient. See 305 ILCS 5/5-1, 4-0.5 (West 2006). We find nothing temporary about the FamilyCare Program, which currently seeks to extend Medicaid coverage to people with incomes up to $83,000 a year. If the situation were to continue as defendants hope, there is no telling what percentage this will reach, as defendants would be able to continue to ignore the limiting TANF eligibility requirements and extend coverage via their program to ultimately anyone at any level of income. Such a decision is for the legislature, who forms statutory laws like Medicaid

16

and TANF and sets eligibility requirements therefor, not for the executive defendants. Moreover, defendants admitted to the trial court that, even at this early point in the creation of their FamilyCare Program, they already cannot identify program participants, provide them with notice, or monitor payments; they do not even know (or at least have refused to reveal) where the premiums they have collected are kept and how much remains. This, in addition to the fact that both JCAR and the Illinois Secretary of State have already twice suspended and prohibited defendants' Emergency and Permanent Rules creating the FamilyCare Program, raises severe concerns--ones we find are more than sufficient to demonstrate, on a *prima facie* basis, that plaintiffs have raised a fair question concerning their rights as state taxpayers and the existence of an irreparable harm to their rights promulgated by defendants' continued operation of the FamilyCare Program.

CONCLUSION

Ultimately, we hold, in accordance with the trial court, that, to receive medical assistance under section 5-2(2)(b) (Medicaid), a would-be recipient must qualify under the limited eligibility requirements of TANF. As the FamilyCare Program admittedly does not limit itself in this regard, defendants' operation of it is not proper under the statutory law upon which it relies. Finding this to be dispositive, we need not address any further arguments on appeal. See White, 368 Ill. App. 3d at 282.

We wish to note here that defendants state in their appellate brief that they issued a "Peremptory Rule" on April 21, 2008, which incorporates the TANF requirements at issue into the FamilyCare Program "if and to the extent required by the trial court's order." They further

17

state that this "remedies the deficiency found by the trial court." However, this is incorrect. As this "Peremptory Rule" was "issued" after the trial court's decision in this cause, it was never presented to that court. As such, it, and any discussion regarding it, is waived for our review. See, *e.g.*, In re O.R., 328 Ill. App. 3d 955, 959 (2002).

Accordingly, for all the foregoing reasons, we affirm the judgment of the trial court granting plaintiffs' motion for preliminary injunction.

Affirmed.

O'MARA FROSSARD and TOOMIN, JJ., concur.

No. 1-08-1061

## REPORTER OF DECISIONS - ILLINOIS APPELLATE COURT
### (Front Sheet to be Attached to Each Case)

Please use the following form

Richard P. Caro, a State of Illinois Taxpayer on Behalf of and for the Benefit of the State of Illinois,

Plaintiff-Appellee

(Ronald Gidwitz and Gregory Baise,

Plaintiffs-Intervenors-Appellees),

v.

Honorable Rod Blagojevich, Governor of the State of Illinois, The Illinois Department of Healthcare and Family Services, Barry S. Maram, Director of IDHFS,

Defendants-Appellants

(The Department of Public Health, Damon Arnold, Director, and Daniel W. Hynes, Comptroller,

Defendants;

Gregory Jacaway *et al.*, Individually and on Behalf of All Similarly Situated People,

Defendants-Intervenors;

The State of Illinois,

Intervenor).

Docket No.

COURT
Opinion
Filed

No. 1-08-1061

Appellate Court of Illinois
First District, FIFTH Division

September 26, 2008
(Give month, day and year)

PRESIDING JUSTICE JAMES FITZGERALD SMITH DELIVERED THE OPINION OF THE COURT:

JUSTICES

O'MARA FROSSARD and TOOMIN, JJ. concur.

APPEAL from the
Circuit Court of Cook
County; the Hon_____
Judge Presiding.

Lower Court and Trial Judge(s) in form indicated in margin:

Appeal from the Circuit Court of Cook County.

The Hon. JAMES R. EPSTEIN, Judge presiding.

APPELLANTS
John Doe, of Chicago
For APPELLEES, :

Indicate if attorney represents APPELLANTS or APPELLEES and include attorney's of counsel. Indicate the word r FOR NONE if not represented.

DEFENDANTS-APPELLANTS: BARNES & THORNBURG LLP, Chicago, IL Larry D. Blust, Marc S. Silver and Katarzyna K. Dygas

PLAINTIFF-APPELLEE: RICHARD P. CARO (*pro se*), Riverside IL Richard Caro

Smith and Smith of Chicago,

PLAINTIFFS-INTERVENORS-APPELLEES: UNGARETTI & HARRIS LLP, Chicago, IL F. Thomas Hecht, Claudette P. Miller and Floyd D. Perkins

(Joseph Brown, of counsel)

INTERVENOR: ATTORNEY GENERAL, STATE OF ILLINOIS, Chicago, IL Lisa Madigan, Attorney General, Rachel Hoover, Assistant Attorney General, and Michael A. Scodro, Solicitor General

*AMICUS* NATIONAL FEDERATION OF INDEPENDENT BUSINESS, SMALL BUSINESS LEGAL CENTER: HOOGENDOORN & TALBOT LLP, Chicago, IL Bruce J. Van Heukelem and Adam C. Zylstra

Add attorneys for third-party.