# ILLINOIS OFFICIAL REPORTS

## Appellate Court

*L.D.S., LLC v. Southern Cross Food, Ltd.*, 2011 IL App (1st) 102379

| | |
|---|---|
| Appellate Court Caption | L.D.S., LLC, an Illinois Liability Company, Plaintiff-Appellant, v. SOUTHERN CROSS FOOD, LTD., Defendant (Brendan Skehan, Defendant-Appellee). |
| District & No. | First District, Sixth Division<br>Docket No. 1–10–2379 |
| Filed | June 10, 2011 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action to enforce a lease, including a guaranty executed by the principal of defendant lessee, the trial court erred in dismissing plaintiff's second amended complaint, since the integration clause in the lease did not preclude plaintiff from alleging that the guaranty was executed contemporaneously with the lease over the period of six days that elapsed during the consummation of the lease transaction, the allegations in plaintiff's second amended complaint did not contradict the allegations in its amended complaint, and the second amended complaint sufficiently alleged the contemporaneous execution of the lease and the guaranty, thereby negating the necessity of separate proof of consideration for the guaranty. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 08–L–8363; the Hon. Brigid Mary McGrath, Judge, presiding. |
| Judgment | Reversed and remanded. |

Counsel on
Appeal

Lawrence C. Rubin and Susan Poll-Klaessy, both of Shefsky & Froelich, Ltd., of Chicago, for appellant.

James L. Poznak and William E. Kenny, both of Poznak Law Firm, Ltd., of Oak Brook, for appellee.

Panel

JUSTICE R. GORDON delivered the judgment of the court, with opinion.

Justices Cahill and McBride concurred in the judgment and opinion.

## OPINION

¶ 1    The appeal in the instant case concerns a lease between plaintiff, L.D.S., an Illinois limited liability company (L.D.S.), and defendant Southern Cross Food, an Illinois corporation (Southern Cross).[1] Six days after the execution of the lease, defendant Brendan Skehan, the principal of Southern Cross, executed a rider to the lease containing a personal guaranty of the rent payment. When Southern Cross failed to pay rent, L.D.S. brought suit for breach of the lease and breach of the guaranty against Southern Cross and Skehan and a default judgment was entered against Southern Cross. After L.D.S. amended its verified complaint twice, the trial court dismissed L.D.S.'s verified second amended complaint with prejudice on a motion under section 2–615 of the Code of Civil Procedure (the Code) (735 ILCS 5/2–615 (West 2004)), denied L.D.S.'s motion to reconsider, and denied L.D.S. leave to file a verified third amended complaint. L.D.S. appeals and we reverse.

¶ 2                                    BACKGROUND

¶ 3    On July 20, 2006, L.D.S., as landlord, and Southern Cross, as tenant, executed a lease dated March 31, 2006, for a property located at 117 South Clinton Street in Chicago, which was to be used as a Quizno's restaurant; Skehan signed the lease as president of Southern Cross. The lease contained a provision allowing Southern Cross certain rights to display signs, including a provision allowing Southern Cross to "make nonstructural alterations and improvements to the interior of the Premises totaling $10,000 or less per alteration and not to exceed $20,000 in total costs in a given calendar year without Landlord's prior consent, which Landlord shall not unreasonably withhold or delay, provided the work is performed in a good and workmanlike manner." The lease also contained a provision that "[c]lauses, exhibits, schedules, plats, riders and addenda, if any, affixed to this Lease are a part hereof" and a provision stating:

_____

[1]Southern Cross is not a party to this appeal.

"Prior Agreement. This Lease contains all of the agreements of the parties hereto with respect to any matter covered or mentioned in this Lease, and no prior agreements or understanding pertaining to any such matters shall be effective for any purpose. No provision of this Lease may be amended or added to except by an agreement in writing signed by the parties hereto or their respective successors in interest. This Lease shall not be effective or binding on any party until fully executed by both parties hereto."

¶ 4     On July 21, 2006, Southern Cross took possession of the property and the keys. On July 24, 2006, Southern Cross tendered L.D.S. its security deposit. On July 26, 2006, L.D.S. and Skehad executed a document entitled "RIDER ATTACHED TO THE LEASE DATED 03-31-2006 BY & BETWEEN L.D.S. LLC Limited Liability Company And Southern Cross Food, Ltd an Illinois Corporation, ('Tenant')." The document provided:

"It is hereby agreed as follows:

The tenant, Mr. Brendon [*sic*] Skehan has signed the lease agreement in [*sic*] behalf of Southern Cross Food, Ltd an Illinois Corporation, ('Tenant'). Upon signing below Brendon [*sic*] Skehan as principal of the corporation 'Southern Cross Food, Ltd corporation' hereby personally guarantees the payments of rent and all others [*sic*] performance or obligations of the tenant."

¶ 5     During the lease term, Southern Cross failed to pay rent, leaving an outstanding balance in 2007 and entirely ceasing to pay rent beginning in March 2008. On July 14, 2008, L.D.S. relet the premises to a Dunkin Donuts restaurant, which began paying rent in November 2008. On July 30, 2008, L.D.S. filed a verified complaint against Southern Cross and Skehan, alleging that they failed to perform their obligations under the lease and seeking a monetary judgment of approximately $100,000. On November 10, 2008, L.D.S. filed a motion for default judgment against both Southern Cross and Skehan. On November 17, 2008, Skehan filed an appearance. On February 24, 2009, the trial court entered a default judgment against Southern Cross in the amount of $94,361.30, plus attorney fees of $2,756.25 and costs.

¶ 6     On December 22, 2008, Skehan filed a motion to dismiss pursuant to section 2–615 of the Code. In the motion, Skehan claimed that the verified complaint did not allege any new consideration for Skehan's personal guaranty of the lease, which was required since the guaranty was executed after the lease became effective. The trial court allowed L.D.S. time to respond to Skehan's motion to dismiss.

¶ 7     L.D.S. did not respond to Skehan's motion to dismiss but, instead, on February 9, 2009, filed a verified amended complaint. Count I of the verified amended complaint was substantially identical to the allegations in the verified complaint. An additional count II included several new allegations:

"9. On or about July 24, 2006, defendant BRENDAN SKEHAN requested permission of plaintiff to place interior signage upon the Premises, which signage marketed and described defendant BRENDAN SKEHAN'S business at the Premises, and defendant agreed to execute a personal guarantee ('the Guarantee') of the obligations of defendant SOUTHERN CROSS FOOD, LTD. under the Lease in favor

-3-

of plaintiff.

10. Pursuant to the July 24, 2006 agreement between plaintiff and defendant BRENDAN SKEHAN, plaintiff agreed to permit defendant BRENDAN SKEHAN to place interior signage upon the Premises, and on or about July 26, 2006, defendant BRENDAN SKEHAN executed a personal guarantee ('the Guarantee') of the Lease, guaranteeing 'the payments of rent and all (other) performance or obligations of the tenant.' "

¶ 8     On March 31, 2009, Skehan filed a motion to dismiss count II of L.D.S.'s verified amended complaint pursuant to section 2–615 of the Code. Once again, Skehan claimed that the verified amended complaint did not allege new consideration for the guaranty.[2] He claimed that the purported consideration was L.D.S.'s granting of permission to install interior signage pursuant to an alleged agreement on July 24, 2006, but claimed that could not be new consideration for the guaranty since installation of the signage was already permitted under the original terms of the lease.

¶ 9     On May 18, 2009, L.D.S. filed a response in opposition to Skehan's motion to dismiss in which it claimed that the guaranty was executed contemporaneously with the lease and therefore no new consideration was needed for the guaranty. On June 10, 2009, Skehan filed a reply in support of his motion to dismiss. In his reply, Skehan acknowledged that if the lease and guaranty were signed contemporaneously, there would be no need for new consideration for the guaranty, but argued that they were not signed contemporaneously. Skehan claimed that L.D.S. failed to allege any facts demonstrating that when L.D.S. and Southern Cross signed the lease, they intended that Skehan would guarantee the lease and that, instead, the verified amended complaint alleged that the guaranty was executed pursuant to a separate agreement on July 24, 2006. On August 14, 2009, the trial court granted Skehan's motion to dismiss without prejudice and granted L.D.S. leave to file a second amended complaint.

¶ 10    On September 11, 2009, L.D.S. filed a verified second amended complaint. Count I concerned the breach of the lease agreement and was substantially identical to the earlier complaints. Count II concerned the breach of guaranty and included several new allegations:

"10. Contemporaneously with the signing of the Lease, on July 26, 2006, Skehan executed a personal guaranty ('Guaranty'). *** The Lease and Guaranty were part of a single lease transaction in which Southern Cross procured a Lease for the Premises and Skehan guarantied Southern Cross's obligation under the Lease.

11. This single transaction took place over the course of several days. On or about July 21, 2006, Skehan signed a Receipt for the keys to the Premises. The Security Deposit was dated July 24, 2006, and was delivered to Plaintiff thereafter with a copy of the executed Lease. *** Plaintiff refused to accept the Security Deposit until Skehan executed the Guaranty on July 26, 2006. Plaintiff never intended to enter into the Lease without the Guaranty."

[2]The motion to dismiss also claimed that the verified amended complaint violated the statute of frauds, but that claim is not at issue on appeal.

-4-

¶ 11 On October 13, 2009, Skehan filed a motion to dismiss count II of the verified second amended complaint pursuant to section 2–615 of the Code. Skehan claimed that the verified second amended complaint failed to cure the pleading defect in the verified amended complaint and that no cure was possible. Skehan claimed that the allegations in the verified second amended complaint were "completely different" than the allegations in the verified amended complaint but that, since the amended complaint was verified, the earlier allegations "remain[ed] judicially binding." Since the court had "already ruled" that the July 24, 2006, agreement lacked consideration and the verified second amended complaint provided "no basis" for the court to rule otherwise, Skehan argued that the court should dismiss count II of the verified second amended complaint with prejudice.

¶ 12 On November 12, 2009, L.D.S. filed a response in opposition to the motion to dismiss, in which it argued that it was permitted to "amplify" its legal theory and include additional consistent facts in support thereof. It also claimed that the factual allegations in the verified second amended complaint were "cumulative, not contradictory" to those in the verified amended complaint and that they demonstrated that the guaranty was executed contemporaneously with the lease. L.D.S. denied that the trial court had ruled on the guaranty's enforceability, noting that a section 2–615 motion was based on the pleadings rather than the underlying facts, and denied that there was a formal " 'July 24, 2006 agreement.' " L.D.S. also claimed that "the allegation in L.D.S.'s Amended Complaint that its agreement to allow Southern Cross to post signs on the premises served as consideration for the Guaranty is not fatal to its Second Amended Complaint," and noted that it was bound only by its factual allegations and not its legal conclusions.

¶ 13 On November 30, 2009, Skehan filed a reply in support of his motion to dismiss in which he again argued that the additional allegations of the verified second amended complaint contradicted the allegations of the verified amended complaint. For the first time, Skehan also argued that the lease contained an integration clause which barred consideration of the guaranty clause since it was not attached to or mentioned in the lease and barred consideration of L.D.S.'s allegation that it never intended to enter into the lease without the guaranty.

¶ 14 On March 3, 2010, L.D.S. filed a motion for leave to file a surreply in opposition to the motion to dismiss in order to address Skehan's argument concerning the integration clause. There is no disposition of the motion in the record on appeal, but on the same day, the trial court granted Skehan's motion to dismiss and dismissed the verified second amended complaint with prejudice.[3]

¶ 15 On April 8, 2010, L.D.S. filed a motion to reconsider the dismissal of the verified second

---

[3]Skehan's motion to dismiss was entitled "Motion to Dismiss the Second Amended Complaint." He and L.D.S. proceeded to argue the issue as though he was seeking solely to dismiss count II of the verified second amended complaint. However, the trial court's written order states that "Plaintiff's Second Amended Complaint be and is hereby dismissed with prejudice and this cause of action be and is hereby dismissed with prejudice." We assume the court was referring to count II of the verified second amended complaint, since count I concerned Southern Food and L.D.S. received a default judgment against it on February 24, 2009.

-5-

amended complaint. In the motion, L.D.S. stated that in dismissing the verified second amended complaint with prejudice, the court found that the verified amended complaint alleged that a July 24, 2006, agreement allowing Skehan to post signs on the premises was consideration for the guaranty.[4] L.D.S. stated that the court further found that L.D.S. was bound to the verified allegation that the agreement to post signs served as consideration for the guaranty and was therefore barred from later alleging that consideration for the lease was sufficient consideration for the guaranty because they were executed contemporaneously.

¶ 16 L.D.S. denied that the verified amended complaint alleged that the discussion regarding signage constituted consideration and claimed that the allegations in the verified amended complaint were consistent with the allegations in the verified second amended complaint. L.D.S. also claimed that, to the extent that it made any inconsistent allegations, it should be given leave to disclose that "any perceived inconsistencies were made through either inadvertence or mistake." Alternatively, L.D.S. asked for leave to file a third amended complaint.

¶ 17 L.D.S. attached a proposed verified third amended complaint to its motion. Count II added several new allegations, including an addition to paragraph 11's list of events surrounding the transaction alleging that "[o]n or about July 24, 2006, L.D.S. agreed to allow Southern Cross to post signs on the premises, and certain signs were also permitted under the Lease." Count II also added a new paragraph:

> "12. In its Verified Amended Complaint, Plaintiff alleged, 'On or about July 24, 2006, defendant BRENDAN SKEHAN requested permission of plaintiff to place interior signage upon the Premises, ***and defendant agreed to execute a personal guarantee*** ("the Guarantee") of the obligations of defendant SOUTHERN CROSS FOOD, LTD. under the Lease in favor of plaintiff.' (Verified Amended Complaint, ¶ 9.) (Emphasis added.) The Verified Amended Complaint further stated that,
>
> > 'Pursuant to the July 24, 2006 agreement between plaintiff and defendant BRENDAN SKEHAN, plaintiff agreed to permit defendant BRENDAN SKEHAN to place interior signage upon the Premises, ***and on or about July 26, 2006, defendant BRENDAN SKEHAN executed a personal guarantee*** ("the Guarantee") of the Lease, guaranteeing "the payments of rent and all (other) performance or obligations of the tenant." '
>
> (Verified Amended Complaint, ¶ 10.) (Emphasis added.) The statements in the Verified Amended Complaint recited a series of events which took place during the completion of the lease transaction between Plaintiff and Skehan. The discussion regarding signage was one of several events which took place over the course of the completion of the single lease transaction. Plaintiff never intended to plead the existence of two separate transactions in its Verified Amended Complaint. Therefore, any perceived or actual inconsistency in the allegations contained in the Verified Amended Complaint with the allegations contained in the Second or Third Amended

---

[4]The trial court did not issue a written opinion, nor is there a transcript of the hearing in the record on appeal.

Complaint were made through inadvertence or mistake and should not be treated as binding inconsistent judicial admissions." (Emphasis in original.)

¶ 18    On May 6, 2010, Skehan filed a response to L.D.S.'s motion to reconsider. As part of his response, Skehan claimed that the trial court determined that the verified second amended complaint contradicted and was barred by the lease's integration clause. Skehan also argued that the court should deny L.D.S.'s motion to file its proposed verified third amended complaint because L.D.S. did not adequately explain or justify its mistake in making inconsistent allegations and the proposed verified third amended complaint was essentially identical to the verified second amended complaint in all other respects.

¶ 19    On May 20, 2010, L.D.S. filed a reply in support of its motion to reconsider, and, on July 19, 2010, the trial court denied L.D.S.'s motion to reconsider. This appeal follows.

¶ 20                                    ANALYSIS

¶ 21    On appeal, L.D.S. raises three claims in support of reversal: (1) the trial court erred in dismissing L.D.S.'s verified second amended complaint, (2) the trial court erred in failing to allow L.D.S. to file its proposed verified third amended complaint, and (3) the trial court erred in holding that the integration clause precluded L.D.S.'s allegations that the guaranty was executed contemporaneously with the lease.

¶ 22               I. Dismissal of Verified Second Amended Complaint

¶ 23    L.D.S. first argues that the trial court erred in dismissing its verified second amended complaint pursuant to section 2–615 of the Code because (1) L.D.S. alleged sufficient consideration for the guaranty and (2) the allegations in the verified second amended complaint were not inconsistent with the allegations in the verified amended complaint.

¶ 24    A motion to dismiss under section 2–615 of the Code challenges the legal sufficiency of the complaint by alleging defects on its face. *Young v. Bryco Arms*, 213 Ill. 2d 433, 440 (2004); *Wakulich v. Mraz*, 203 Ill. 2d 223, 228 (2003). We review *de novo* an order granting a section 2–615 motion to dismiss. *Young*, 213 Ill. 2d at 440; *Wakulich*, 203 Ill. 2d at 228. The critical inquiry is whether the allegations in the complaint are sufficient to state a cause of action upon which relief may be granted. *Wakulich*, 203 Ill. 2d at 228. In making this determination, all well-pleaded facts in the complaint, and all reasonable inferences that may be drawn from those facts, are taken as true. *Young*, 213 Ill. 2d at 441. In addition, we construe the allegations in the complaint in the light most favorable to the plaintiff. *Young*, 213 Ill. 2d at 441.

¶ 25    In the case at bar, in order for L.D.S. to prevail, we must find in its favor on both of its arguments: we must find that the verified second amended complaint did not contradict the verified amended complaint and we must find that the allegations in the verified second amended complaint sufficiently allege that there was consideration for the guaranty. Additionally, we must find that the lease's integration clause did not prevent L.D.S. from alleging that the guaranty was executed contemporaneously with the lease. If we find in Skehan's favor on any of these issues, we must affirm the trial court's dismissal of the

verified second amended complaint.

¶ 26                                    A. Integration Clause

¶ 27        We first consider whether the lease's integration clause prevents L.D.S. from alleging that the guaranty was part of the lease. Although L.D.S. treats the question of the applicability of the integration clause as a separate basis for reversal, it is more properly considered as a part of our analysis on the dismissal of the verified second amended complaint. If the integration clause applied to the guaranty, the trial court's dismissal of the verified second amended complaint would have been proper even if we agreed with L.D.S. concerning its other arguments, since L.D.S. would not have been able to demonstrate that the guaranty was executed as part of the lease transaction.

¶ 28        Before reaching the merits of the issue, we address waiver arguments from both parties. L.D.S. argues that the trial court should not have considered Skehan's argument concerning the integration clause because it was raised for the first time in Skehan's reply brief in support of his motion to dismiss the verified second amended complaint. However, L.D.S. does not raise this issue as a basis for reversal, nor would such an argument be successful. The issue was raised in Skehan's reply brief, was addressed in L.D.S.'s motion to file a surreply brief, and, according to L.D.S.'s brief on appeal, was argued before the trial court during the hearing on the motion to dismiss. The record does not indicate whether the trial court considered the integration clause as a basis for its grant of the motion to dismiss, but if it did, it did so on an issue that had been argued to its satisfaction. See, *e.g.*, *Caro v. Blagojevich*, 385 Ill. App. 3d 704, 710-11 (2008) (even if plaintiffs' argument had been only a few sentences, "it is clear that plaintiffs adequately raised the issue at the outset of this cause and argued it before the trial court to that court's satisfaction, and defendants' assertions otherwise are wasted words"); *Redelmann v. Claire-Sprayway, Inc.*, 375 Ill. App. 3d 912, 929 (2007) (despite the fact that it was late in the pleading process, the trial court properly considered an issue raised for the first time in the reply brief on a motion to reconsider).

¶ 29        Skehan also raises an argument concerning waiver. He argues that since L.D.S.'s arguments against the integration clause in its brief before this court were not supported by citation to authority, its arguments should be forfeited on appeal. Illinois Supreme Court Rule 341(h)(7) (eff. July 1, 2008) requires the appellant to support its arguments with citations to authority and a failure to do so may result in forfeiture of the issue on appeal. See *People v. Ward*, 215 Ill. 2d 317, 331-32 (2005). However, waiver is an admonition to the parties, not a limitation upon the powers of courts of review. *Flynn v. Ryan*, 199 Ill. 2d 430, 438 n.1 (2002). Here, since L.D.S.'s argument depends on the plain meaning of the words in the integration clause, we are able to analyze its arguments effectively despite the lack of citation to authorities and choose to do so. Thus, we proceed to consider the issue on its merits.

¶ 30        The question in the case at bar is whether the lease's integration clause prevents L.D.S. from alleging that it was executed contemporaneously with the lease. The lease included a provision stating, in pertinent part:

              "This Lease contains all of the agreements of the parties hereto with respect to

any matter covered or mentioned in this Lease, and no prior agreements or understanding pertaining to any such matters shall be effective for any purpose."

Both parties agree that the quoted part of the provision is an integration clause. Where parties to a contract include an integration clause, "they are explicitly manifesting their intention to protect themselves against misinterpretations which might arise from extrinsic evidence." *Air Safety, Inc. v. Teachers Realty Corp.*, 185 Ill. 2d 457, 464 (1999). Thus, in interpreting the contract, the court examines the language of the contract alone, without considering extrinsic evidence of prior negotiations. *Air Safety*, 185 Ill. 2d at 464-65.

¶ 31 Skehan argues that L.D.S. is precluded from enforcing the guaranty because the integration clause provides that the only agreements between the parties concerning the lease were contained within the lease itself. Thus, Skehan argues that L.D.S. cannot successfully argue that the guaranty was a contemporaneous agreement entered into at the time of the lease and that L.D.S. had no intention of entering into the lease without the guaranty. In response, L.D.S. makes a plain language argument that the integration clause only applies to (1) prior agreements (2) between the parties (3) with respect to matters covered or mentioned in the lease and that the guaranty agreement does not fall within any of those categories. We agree with L.D.S. with respect to at least part of its argument.

¶ 32 As L.D.S. notes, the integration clause specifically states that the lease "contains all of the agreements *of the parties* hereto" (emphasis added). The lease also identifies the "parties" to the lease in paragraph 1:

"1. PARTIES. This Lease *** is made by and between L.D.S. LLC, an Illinois limited liability company ('Landlord'), and Southern Cross Food, Ltd., an Illinois Corporation ('Tenant')."

The parties to the lease are identified as L.D.S. and Southern Cross. Skehan, serving as principal of Southern Cross at the time of the lease's execution, was not named as a party. In his brief, Skehan acknowledges that he was not a "direct party" to the lease but argues that he may enforce the integration clause because he was not a stranger to the lease. Skehan misunderstands L.D.S.'s argument. The plain language of the integration clause is limited to agreements of the parties. The parties are defined within the lease. Skehan is not listed as a party to the lease. Therefore, the integration clause does not speak to any agreements made between him and either L.D.S. or Southern Cross.

¶ 33 Skehan also argues that L.D.S. has forfeited this argument by not raising it before the trial court. Although L.D.S. did not raise the specific argument that Skehan was not a party to the lease before the trial court, it did argue that the integration clause did not bar enforcement of the integration clause and made a plain language argument that the language of the clause only applied to prior agreements. We find that L.D.S. sufficiently raised the issue of the applicability of the integration clause and we will consider its argument. Since we find that the integration clause applies only to agreements between the parties, we find that the integration clause did not preclude L.D.S.'s argument that the guaranty was executed contemporaneously with the lease.

¶ 34                    B. Comparison Between Complaints

¶ 35    We next consider whether the allegations in the verified second amended complaint contradicted the allegations in the verified amended complaint. A factual admission in a verified pleading constitutes a judicial admission, which has the effect of withdrawing a fact from issue and makes it unnecessary for the opposing party to introduce evidence in support thereof. *Farwell Construction Co. v. Ticktin*, 59 Ill. App. 3d 954, 958-59 (1978). A sworn statement of fact in a verified pleading remains binding on the party even after an amendment, and the party cannot subsequently contradict the factual allegation. *Charter Bank & Trust of Illinois v. Edward Hines Lumber Co.*, 233 Ill. App. 3d 574, 578 (1992); *Winnetka Bank v. Mandas*, 202 Ill. App. 3d 373, 397 (1990); *Farwell*, 59 Ill. App. 3d at 959. Thus, if the factual allegations in the verified second amended complaint contradicted those in the verified amended complaint, the allegations in the verified amended complaint would remain binding and the trial court's decision to dismiss the verified second amended complaint would be proper.

¶ 36    In the case at bar, Skehan argues that the allegations in the verified second amended complaint contradict the allegations in the verified amended complaint. In the verified amended complaint, L.D.S. alleges:

> "9. On or about July 24, 2006, defendant BRENDAN SKEHAN requested permission of plaintiff to place interior signage upon the Premises, which signage marketed and described defendant BRENDAN SKEHAN'S business at the Premises, and defendant agreed to execute a personal guarantee ('the Guarantee') of the obligations of defendant SOUTHERN CROSS FOOD, LTD. under the Lease in favor of plaintiff.

> 10. Pursuant to the July 24, 2006 agreement between plaintiff and defendant BRENDAN SKEHAN, plaintiff agreed to permit defendant BRENDAN SKEHAN to place interior signage upon the Premises, and on or about July 26, 2006, defendant BRENDAN SKEHAN executed a personal guarantee ('the Guarantee') of the Lease, guaranteeing 'the payments of rent and all (other) performance or obligations of the tenant.' "

In the verified second amended complaint, L.D.S. alleges:

> "10. Contemporaneously with the signing of the Lease, on July 26, 2006, Skehan executed a personal guaranty ('Guaranty'). *** The Lease and Guaranty were part of a single lease transaction in which Southern Cross procured a Lease for the Premises and Skehan guarantied Southern Cross's obligation under the Lease.

> 11. This single transaction took place over the course of several days. On or about July 21, 2006, Skehan signed a Receipt for the keys to the Premises. The Security Deposit was dated July 24, 2006, and was delivered to Plaintiff thereafter with a copy of the executed Lease. *** Plaintiff refused to accept the Security Deposit until Skehan executed the Guaranty on July 26, 2006. Plaintiff never intended to enter into the Lease without the Guaranty."

¶ 37    Skehan argues that the verified second amended complaint contradicts the verified amended complaint because the verified amended complaint alleges facts setting forth two

-10-

transactions while the verified second amended complaint alleges that the lease and the guaranty were executed as part of a single transaction. L.D.S., on the other hand, argues that the allegations in the verified second amended complaint are "entirely consistent" with the allegations in the verified amended complaint. After closely examining the language in the two complaints, we agree with L.D.S.

¶ 38    Skehan's argument relies on the assumption that L.D.S.'s verified amended complaint alleges the existence of two separate transactions–the execution of the lease on July 20, 2006, and another agreement on July 24, 2006–and that the guaranty was signed based on the July 24, 2006, agreement. While at first glance, Skehan's interpretation appears correct, a close examination of the allegations reveals that Skehan's interpretation is not the only interpretation.

¶ 39    Paragraph 9 of the verified amended complaint alleges that on July 24, 2006, two incidents occurred: (1) Skehan requested permission to place interior signage on the premises and (2) Skehan agreed to execute a personal guaranty. Paragraph 9 does not contain any allegations that Skehan signed the guaranty in order to receive permission to place signs on the premises but simply alleges that they occurred on the same day. Paragraph 10 of the verified amended complaint calls the incidents occurring on July 24, 2006, the "July 24, 2006 agreement." The rest of paragraph 10 is susceptible to two interpretations. One way to read the paragraph is that pursuant to the July 24, 2006, agreement, (1) L.D.S. agreed to allow Skehan to place signage on the premises and (2) Skehan executed the guaranty, which occurred on July 26, 2006. This interpretation would indicate that the guaranty was executed pursuant to the July 24, 2006, agreement, leading to an inference that the July 24, 2006, agreement was a separate transaction. The other way to read paragraph 10 is as two separate ideas: (1) pursuant to the July 24, 2006, agreement, L.D.S. agrees to allow Skehan to place signage on the premises and, additionally, (2) on July 26, 2006, Skehan executed the guaranty. Under either interpretation, paragraph 10 never explicitly alleges that Skehan executed the guaranty in exchange for L.D.S.'s permission to install signage.

¶ 40    The verified second amended complaint adds facts to the allegations of the verified amended complaint. Paragraph 10 explicitly alleges that the guaranty and lease were part of a single transaction. Paragraph 11 enumerates the chronology of the transaction: (1) on July 21, Skehan signed a receipt for the keys to the premises, (2) the security deposit was signed on July 24, 2006, and was delivered "thereafter" to L.D.S., and (3) L.D.S. refused to accept the security deposit until Skehan executed the guaranty on July 26, 2006.

¶ 41    Considering the two complaints together, it is possible to read them consistently as a chronology of events. On July 21, 2006, Skehan signed a receipt for the keys. On July 24, 2006, the security deposit was signed and delivered to L.D.S., Skehan asked for permission to install signage, L.D.S. agrees to allow Skehan to install signage but refused to accept the security deposit, and Skehan agrees to execute a guaranty. On July 26, 2006, Skehan executed the guaranty. Additionally, it is not inconsistent to allege an "agreement" on July 24, 2006, that was nevertheless part of the larger "lease transaction." Accordingly, since the allegations of the verified second amended complaint can be read consistently with the allegations in the verified amended complaint, the allegations in the verified second amended complaint should have been considered in determining whether L.D.S. stated a cause of

-11-

action.

¶ 42                                    C. Consideration

¶ 43     Finally, in determining whether the verified second amended complaint was properly dismissed, we must consider whether the allegations in the verified second amended complaint state a cause of action; specifically, we must consider whether the verified second amended complaint sufficiently alleges consideration for the guaranty. Skehan argues that the issue of consideration was only considered by the trial court with respect to the allegations of the verified amended complaint, since it dismissed the verified second amended complaint based on the contradiction between the complaints and the presence of the integration clause. However, as noted, the record does not indicate the basis for the trial court's decision so there is no way for us to determine what was considered by the trial court, especially since L.D.S.'s brief in opposition to Skehan's motion to dismiss argues that the verified second amended complaint sufficiently alleges consideration for the guaranty. Additionally, we may affirm the decision of the trial court on any basis supported by the record, regardless of whether the basis was relied upon by the lower court. *Beacham v. Walker*, 231 Ill. 2d 51, 61 (2008). Thus, if we find that the verified second amended complaint fails to allege consideration for the guaranty, we may affirm the trial court's decision to dismiss the complaint.

¶ 44     If a guaranty is executed after the underlying obligation was entered into, new consideration is generally needed for the guaranty. *Tower Investors, LLC v. 111 East Chestnut Consultants, Inc.*, 371 Ill. App. 3d 1019, 1028 (2007). However, if a guaranty is executed contemporaneously with the original contract, the consideration for the original contract is sufficient consideration for the guaranty and no new consideration is required for the guaranty. *Tower Investors*, 371 Ill. App. 3d at 1028; *Pedott v. Dorman*, 192 Ill. App. 3d 85, 94 (1989); *Continental National Bank of Fort Worth v. Schiller*, 89 Ill. App. 3d 216, 219-20 (1980); *Vaughn v. Commissary Realty, Inc.*, 30 Ill. App. 2d 296, 302 (1961). In the case at bar, the verified second amended complaint contains allegations that the lease and the guaranty were executed contemporaneously as part of a single "lease transaction," despite the fact that the guaranty was executed six days after the execution of the lease.

¶ 45     While there are few cases discussing the time limit after which a guaranty is no longer considered to be executed contemporaneously with the lease, we find the case of *Vaughn v. Commissary Realty, Inc.*, 30 Ill. App. 2d 296 (1961), instructive. In that case, on or about February 11, 1957, the plaintiffs entered into a lease for real estate in Champaign with the defendant, a corporation. *Vaughn*, 30 Ill. App. 2d at 297. The lease provided in part that the defendant would not be liable for any default in rental payments by an assignee of the lease. *Vaughn*, 30 Ill. App. 2d at 298. Approximately nine days later, on February 20, 1957, the defendant executed a guaranty, guaranteeing performance by its assignees by paying any unpaid rent or paying a set sum that was based on the time the default occurred. *Vaughn*, 30 Ill. App. 2d at 297-98. Later, one of the defendant's assignees defaulted on the lease by failing to pay the rent. *Vaughn*, 30 Ill. App. 2d at 299. The plaintiffs brought suit against the defendant, seeking a monetary judgment under the terms of the guaranty. *Vaughn*, 30 Ill.

App. 2d at 299. In its answer, the defendant argued as an affirmative defense that the guaranty was executed without consideration and was therefore void. *Vaughn*, 30 Ill. App. 2d at 300. After a bench trial, the trial court entered judgment in favor of the plaintiffs. *Vaughn*, 30 Ill. App. 2d at 300-01.

¶ 46 On appeal, the appellate court held that the evidence demonstrated that the guaranty was executed contemporaneously with the lease. *Vaughn*, 30 Ill. App. 2d at 302. The court noted that the preamble of the guaranty "clearly indicated" that the guaranty was executed by the defendant as a part of its lease transaction and that the reason for the existence of the guaranty was the fact that under the lease, the defendant was not liable for any default in rental payment by assignees. *Vaughn*, 30 Ill. App. 2d at 301. The court further noted that the defendant regularly leased properties and immediately assigned them to a different corporation and regularly included guaranty agreements, although the guaranty in the case was not the defendant's standard guaranty. *Vaughn*, 30 Ill. App. 2d at 301-02. The court held that the evidence in the case demonstrating the execution of the lease and the guaranty "warrants no conclusion other than that the lease and guaranty *** were part of a single transaction in which defendant procured a lease for plaintiffs' premises and plaintiffs were given an agreement guaranteeing the rent reserved under said lease." *Vaughn*, 30 Ill. App. 2d at 302. It specifically noted that the passage of nine days between the execution of the lease and the execution of the guaranty was "without significance," stating that "[t]here is no evidence in the record indicating any separate negotiations between the parties concerning the guaranty agreement. If any took place, then we must assume that defendant would have produced evidence as to the same." *Vaughn*, 30 Ill. App. 2d at 302-03.

¶ 47 Similarly, we find that despite the fact that six days elapsed between the execution of the lease and the execution of the guaranty, L.D.S. sufficiently alleges that the two were executed contemporaneously. L.D.S. has provided a chronology of events surrounding the lease, alleging that after the lease was executed on July 20, 2006, the parties continued to engage in a series of interactions surrounding the lease: obtaining possession of the keys on July 21, 2006, sending the security deposit and having a discussion about signage and the guaranty on July 24, 2006, and signing the guaranty on July 26, 2006. The guaranty is also entitled "Rider Attached to the Lease" and specifically refers to the lease. Considering the facts in the light most favorable to L.D.S., we find that the verified second amended complaint alleges facts demonstrating that the guaranty was executed contemporaneously with the lease.

¶ 48                    II. Leave to File Proposed Third Amended Complaint

¶ 49 L.D.S. also argues that the trial court erred in denying it leave to file a third amended complaint. Since we are reversing the trial court's dismissal of the second amended complaint, there is no need for us to decide this issue.

¶ 50                                    CONCLUSION

¶ 51 We find that the lease's integration clause does not preclude L.D.S. from alleging that the guaranty was executed as part of the lease transaction. We further find that the allegations in the verified second amended complaint do not contradict the allegations in the verified

amended complaint and that the allegations in the verified second amended complaint sufficiently allege that the lease and the guaranty were executed contemporaneously.

¶ 52          Reversed and remanded.