2014 IL App (1st) 121111
No. 1-12-1111
Opinion filed March 31, 2014

Sixth Division

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| JPMORGAN CHASE BANK, N.A., Successor by Merger to Bank One, NA, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff and Counterdefendant-Appellee, | ) ) | |
| v. | ) ) | No. 2008 L 051299 |
| EAST-WEST LOGISTICS, L.L.C., a Nevada Limited Liability Company, MICHAEL STRUCK, Not Individually But in His Capacity as Personal Representative of the Estate of James Wesley Taylor, Deceased, and EAST WEST LOGISTICS SUPPLY, LLC, an Arizona Limited Liability Company, | ) ) ) ) ) ) ) | Honorable Allen S. Goldberg and John C. Griffin, Judges Presiding. |
| Defendants | ) ) | |
| (Arthur Wondrasek, | ) ) | |
| Defendant and Counterplaintiff-Appellant). | ) | |

JUSTICE HALL delivered the judgment of the court, with opinion.

Presiding Justice Rochford and Justice Lampkin concurred in the judgment and opinion.

**O P I N O N**

¶ 1     On December 4, 2008, the plaintiff, JPMorgan Chase Bank, N.A. (Chase Bank), filed a verified multicount complaint against Arthur Wondrasek[1] and other named parties. Following Mr. Wondrask's death in 2010, his estate (hereinafter the Estate) was substituted as a defendant. In 2012, the circuit court of Cook County entered orders dismissing the Estate's affirmative defenses and counterclaims and granted partial summary judgment to the plaintiff, Chase Bank.

¶ 2     On appeal, the Estate contends as follows: the dismissal of its affirmative defenses and counterclaims was error; the award of summary judgment to Chase Bank was error; and the circuit court erred in ordering the Estate to pay discovery costs to Chase Bank. On review, we find no error and affirm the orders of the circuit court.

¶ 3                                   BACKGROUND

¶ 4     The pertinent facts are taken from the record on appeal. In 2003, Bank One, NA, entered into a lending relationship with defendant East-West Logistics, L.L.C. (East-West), and furnished a line of credit to East-West in the amount of $1 million. On December 10, 2003, Mr. Wondrasek executed a continuing guaranty of East-West's obligation under the line of credit loan (the guaranty).

¶ 5     The continuing guaranty provided in pertinent part as follows:

---

[1]     Arthur Wondrasek is also referred to as Arthur Wondrasek, Jr., in the record.

"Guaranty. To induce Bank One, NA *** (the 'Bank'), and its successors and assigns, at its option, to make loans, extend or continue credit or some other benefit *** present or future, direct or indirect, *** to [East-West] *** and because [Mr. Wondrasek] has determined that executing this Guaranty is in [his] interest and to [his] financial benefit, [Mr. Wondrasek] unconditionally guarantees to the Bank, as primary obligor and not merely as surety, the full and prompt payment of the Liabilities when due, whether at stated maturity, by acceleration or otherwise.

* * *

Limitation. [Mr. Wondrasek's] obligation under this Guaranty is unlimited.

Continued Reliance. The Bank may continue to make loans or extend credit to [East-West] based on this Guaranty until it receives written notice of termination from [Mr. Wondrasek], regardless of whether at any time or from time to time there are no existing Liabilities or commitment by the Bank to make advances or other financial accommodations for [East-West].

* * *

Permissible Actions. [Mr. Wondrasek] authorizes the Bank, without notice or demand and without affecting [Mr. Wondrasek's] obligations hereunder, from time to time to[] (a) renew, modify, compromise, extend, accelerate or otherwise change the time for payment of, or otherwise change the terms of the Liabilities or any part thereof, including increasing or decreasing the rate of interest thereon. *** [Mr. Wondrasek's] obligations under this Guaranty shall not be released, diminished or affected by (i) any act or omission of the Bank ***.

Nature of Guaranty. This Guaranty is a guaranty of payment and not of collection. Therefore, the Bank may insist that [Mr. Wondrasek] pay immediately, and the Bank is not required to attempt to collect first from [East-West] ***.

* * *

Waivers. [Mr. Wondrasek] waives (a) to the extent permitted by law, all rights and benefits under any laws or statutes regarding sureties, as may be amended, and (b) any right [Mr. Wondrasek] may have to receive notice of the following matters before the Bank enforces any of its rights (i) the Bank's acceptance of this Guaranty, (ii) any credit that the Bank extends to [East-West], (iii) [East-West's] default, (iv) any demand, diligence, presentment, dishonor and protest, or any action that the Bank takes regarding [East-West] *** or any of the Liabilities, which it might be entitled to by law or under any other agreement *** (d) any defense based on any claim that [Mr. Wondrasek's] obligations exceed or are more burdensome than those of [East-West],

* * *

Information. [Mr. Wondrasek] assumes all responsibility for being and keeping [himself] informed of [East-West's] financial condition and assets, and of all other circumstances bearing upon the risk of nonpayment of the Liabilities and the nature, scope and extent of the risks that [Mr. Wondrasek] assumes and incurs under this Guaranty and agrees that the Bank does not have any duty to advise [Mr. Wondrasek] of information known to it regarding those circumstances or risks ***." (Emphasis omitted.)

¶ 6    In its complaint, Chase Bank, the successor to Bank One since 2004, alleged that the loan to East-West had matured on February 24, 2008, and as of November 17, 2008, East-West

owed a balance of $1,627,339.46 on the loan. In addition, East-West was obligated to pay attorney fees, costs and expenses incurred by Chase Bank in collecting the amounts due under the credit agreement. In count III of the complaint, Chase Bank sought to enforce the guaranty against Mr. Wondrasek to recover the outstanding loan balance as well as the attorney fees, costs and expenses of collection.

¶ 7 On November 12, 2009, Mr. Wondrasek filed a verified answer and seven affirmative defenses. Mr. Wondrasek admitted he had executed the guaranty as alleged in the complaint and evidenced by an exhibit to the complaint but denied the remaining allegations for lack of knowledge. On December 2, 2009, Chase Bank filed a motion pursuant to section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615 (West 2008)) (the Code) to dismiss the affirmative defenses. On October 22, 2010, following Mr. Wondrasek's death and the substitution of the Estate, Circuit Court Judge Allen S. Goldberg dismissed six of the seven affirmative defenses, and the Estate withdrew the remaining affirmative defense. The Estate was given 28 days to replead the affirmative defenses.

¶ 8 On November 23, 2010, Chase Bank filed a motion seeking reimbursement of electronic discovery costs from the Estate. In support of its motion, Chase Bank argued that the Estate opposed Chase Bank's request to stay all discovery until the parties were at issue on the pleadings, and insisted that discovery go forward.

¶ 9 On December 15, 2010, the Estate filed counterclaims and amended affirmative defenses. The counterclaims sought recovery for common law fraud and under the Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1 *et seq.* (West 2010)) (the Consumer Fraud Act). The Estate set forth the following amended affirmative defenses: (1) extinguishment of the guaranty; (2) doctrine of equitable estoppel; (3) breach of the duty of

good faith; and (4) setoff. As the factual basis for the counterclaims and amended affirmative defenses, the Estate alleged that Chase Bank created phony "SOFA" accounts (secured out of formula advance) to which the loan balance was transferred in order to hide the existence of East-West's defaults from Mr. Wondrasek

¶ 10      On April 27, 2011, Judge Goldberg entered an order granting Chase Bank's section 2-615 motion to dismiss the Estate's counterclaims and amended affirmative defenses. Judge Goldberg granted in part and denied in part Chase Bank's motion to assess discovery costs and assessed the Estate $3,025.80 in costs. On June 21, 2011, Judge Goldberg entered judgment against the Estate in the amount of $3,025.80.

¶ 11      On June 28, 2011, Chase Bank filed a motion for summary judgment on count III of the complaint. According to Chase Bank, it was undisputed that Mr. Wondrasek executed the guaranty and then defaulted on it, that Chase Bank was the lawful holder of the note and that the indebtedness on the line of credit loan matured on February 28, 2008, and remained unpaid. Since there was no genuine issue of material fact, Chase Bank maintained it was entitled to summary judgment as a matter of law.

¶ 12      On August 16, 2011, the Estate filed a motion to strike two affidavits filed by Chase Bank in support of its motion for summary judgment, and filed its response to Chase Bank's summary judgment motion. The Estate argued that the affidavits were inadmissible and therefore could not provide the necessary foundation for the admission of the documents evidencing the loan to and the balance owed on the loan by East-West. In its response to the summary judgment motion, the Estate argued that the motion should be denied in the absence of any admissible evidence of the original note, any of the replacement notes or the 2007 note modification. The Estate asserted that Chase Bank failed to establish that East-West

defaulted on the loan, that East-West owed any amount to Chase Bank and that Chase Bank failed to provide sufficient evidence of how it calculated the loan indebtedness.

¶ 13 On September 13, 2011, the Estate filed a motion for leave to file its amended counterclaims and second amended affirmative defenses. The Estate explained that the amended counterclaims and second amended affirmative defenses were reasserted for appeal purposes only. The Estate also corrected the allegations regarding the creation of the SOFA accounts. It now alleged that the SOFA accounts were never created, but nonetheless, "when the Bank was hypothetically shifting money around in these various fake accounts, it was doing so in order to conceal East West's defaults, and prevent Wondrasek from cancelling his Guaranty." The Estate also added a fifth affirmative defense. The Estate alleged that Mr. Wondrasek was not a party to the 2007 modification agreement and, therefore, no longer a guarantor of Chase Bank's loan to East-West. On October 12, 2011, Chase Bank filed a motion requesting that the Estate be denied leave to file its amended counterclaim and second amended affirmative defenses, and in the alternative, moved to dismiss. On January 5, 2012, the Estate filed a motion for reconsideration of the order of April 27, 2011, dismissing the counterclaims and amended affirmative defenses.

¶ 14 On January 9, 2012, Circuit Court Judge John C. Griffin granted the Estate leave to file its amended counterclaims and second amended affirmative defenses. Judge Griffin then granted Chase Bank's motion to dismiss the Estate's counterclaims and second amended affirmative defenses. The remaining matters were set for hearing on March 14, 2012.

¶ 15 On March 14, 2012, Judge Griffin entered an order denying the Estate's motion for reconsideration of the April 27, 2011, order dismissing its counterclaims and amended affirmative defenses. The judge also denied the Estate's motion to strike the summary

judgment affidavits. Judge Griffin granted Chase Bank's motion for partial summary judgment as to count III of the complaint and entered judgment against the Estate in the amount of $2,044,411.97. Since the case was continued for status on the remaining counts, Judge Griffin made a finding pursuant to Illinois Supreme Court Rule 304(a) (Ill. S. Ct. R. 304(a) (eff. Feb. 26, 2010)) that there was no just reason to delay the enforcement or appeal of the March 14, 2012, order. The Estate filed its notice of appeal on April 12, 2012.

¶ 16    On May 11, 2012, Judge Griffin granted Chase Bank's motion for voluntary dismissal of counts II (breach of guaranty – estate of James Wesley Taylor) and count IV (breach of guaranty – East West Logistics Supply, LLC) without prejudice. The order further stated that all pending claims had been resolved.[2]

¶ 17                            ANALYSIS

¶ 18                        I. Appellate Jurisdiction

¶ 19    Initially, we must address the Estate's challenge to our jurisdiction of this appeal. The Estate contends that this court has jurisdiction of the March 14, 2012, order but not the orders entered prior to the entry of that order. Chase Bank maintains that after the circuit court disposed of all the pending claims in its order of May 11, 2012, the Estate was required to file a second notice of appeal in order to appeal those prior nonfinal orders. In the absence of the second notice of appeal, Chase Bank maintains this court has no jurisdiction to review any of the nonfinal orders entered prior to the March 14, 2012, order.

---

[2]    In its motion for voluntary dismissal, Chase Bank stated that the counts against East-West had been dismissed due to its filing for bankruptcy.

¶ 20                                A. Standard of Review

¶ 21        A challenge to our jurisdiction is a question of law. *In re Marriage of Demaret*, 2012 IL App (1st) 111916, ¶ 25. Questions of law are subject to *de novo* review. *Jones v. DHR Cambridge Homes, Inc.*, 381 Ill. App. 3d 18, 38 (2008).

¶ 22                                   B. Discussion

¶ 23        On April 12, 2012, the Estate filed its notice of appeal from the following orders of the circuit court: (1) October 22, 2010, order dismissing the Estate's affirmative defenses; (2) April 27, 2011, order dismissing the Estate's counterclaim and first amended affirmative defenses and granting in part Chase Bank's motion to assess costs; (3) June 21, 2011, order entering judgment against the Estate in the amount of $3, 025.80; (4) January 9, 2012, order dismissing the Estate's amended counterclaim and second amended affirmative defenses; and (5) March 14, 2012, order granting summary judgment to Chase Bank on count III of the complaint in the amount of $2,044,411.97, denying the Estate's motion for reconsideration, denying the Estate's motion to strike the plaintiff's affidavits, and denying the Estate's oral motion to file additional affirmative defenses and counterclaims. The March 14, 2012, order contained a Rule 304(a) finding by the circuit court.

¶ 24        Subject to certain exceptions, the jurisdiction of the appellate court is limited to reviewing appeals from final judgments. *Valdovinos v. Luna-Manalac Medical Center, Ltd.*, 307 Ill. App. 3d 528, 537 (1999). An order is a final judgment if it terminates the litigation on its merits or disposes of the rights of the parties' entire controversy or on some definite part of the litigation. *Citicorp Savings of Illinois v. First Chicago Trust Co. of Illinois*, 269 Ill. App. 3d 293, 296-97 (1995). In order for a party to appeal from a final order which does not resolve all of the claims raised in the case, the circuit court must make a finding pursuant

to Rule 304(a). As we noted above, the March 14, 2012, order contained a Rule 304(a) finding.

¶ 25     Chase Bank does not dispute that the March 14, 2012, order was a final order as to the Estate. An appeal from a final judgment draws into issue all prior interlocutory orders which constituted a procedural step in the progression leading to the entry of the final judgment from which an appeal has been taken. *Valdovinos*, 307 Ill. App. 3d at 538.

¶ 26     We agree with the Estate that the orders dismissing the counterclaims and affirmative Defenses and the judgment order awarding discovery costs were appealable as steps in the progression to the grant of summary judgment. *Sacramento Crushing Corp. v. Correct/All Sewer, Inc.*, 318 Ill. App. 3d 571, 574 (2000). We conclude that we have jurisdiction to consider the orders listed in the notice of appeal.

¶ 27                         II. Affirmative Defenses

¶ 28                         A. Standard of Review

¶ 29     The *de novo* standard applies to our review of a circuit court's dismissal pursuant to section 2-615 of the Code. See *R&B Kapital Development, LLC v. North Shore Community Bank & Trust Co.*, 358 Ill. App. 3d 912, 920 (2005).

¶ 30                         B. Discussion

¶ 31     An affirmative defense must allege facts with the same degree of specificity required to establish a cause of action. *International Insurance Co. v. Sargent & Lundy*, 242 Ill. App. 3d 614, 630 (1993). As with all section 2-615 motions, a section 2-615 motion to dismiss affirmative defenses admits all well-pleaded facts constituting the defenses and attacks only the legal sufficiency of those facts. *Sargent & Lundy*, 242 Ill. App. 3d at 630-31. An

affirmative defense should not be stricken where well-pleaded facts raise the possibility that the party asserting the defense will prevail. *Sargent & Lundy*, 242 Ill. App. 3d at 631. A guaranty is a contract; therefore, we apply the standards governing the interpretation of contracts. *T.C.T. Building Partnership v. Tandy Corp.*, 323 Ill. App. 3d 114, 118 (2001). The guaranty is strictly construed in favor of the guarantor, but only where some doubt has arisen as to the meaning of the guaranty language. *T.C.T. Building Partnership*, 323 Ill. App. 3d at 118-19. Terms of a guaranty which are clear and unambiguous must be given effect as written. *T.C.T. Building Partnership*, 323 Ill. App. 3d at 119. Under such circumstances, the meaning of a guaranty presents a question of law. *T.C.T. Building Partnership*, 323 Ill. App. 3d at 119.

¶ 32                                    1. *Extinguishment of the Guaranty*

¶ 33        The Estate contends that any liability it owed on the guaranty was extinguished by Chase Bank when it materially increased Mr. Wondrasek's risk as the guarantor by continuing to lend to East-West despite existing defaults and hiding those defaults by purporting to create phony SOFA accounts for East-West into which Chase Bank could move loan funds without informing Mr. Wondrasek. A guarantor will be discharged *pro tanto* of his obligation where, without the consent of the guarantor, the creditor takes any action to vary the terms of the principal obligation, to increase the guarantor's risk or to deprive the guarantor of the opportunity to protect himself. *McHenry State Bank v. Y&A Trucking, Inc.*, 117 Ill. App. 3d 629, 633 (1983). The Estate argues that the guaranty did not cover loans made in violation of the loan documents. The Estate points to the "conditions precedent to each extensions of credit" contained in the line of credit agreement between Chase Bank and East-West. An

extension of credit could be obtained provided that "no default has occurred in any provision of [the line of credit] agreement, the notes or any agreement related to the credit facilities."

¶ 34    The language of the guaranty defeats the affirmative defense of extinguishment.  The terms of the guaranty provide that Mr. Wondrasek "unconditionally guaranteed" payment of the liabilities; his liability under the guaranty was "unlimited"; Chase Bank could continue to make loans to East-West under the guaranty until it received a written termination notice from Mr. Wondrasek; Mr. Wondrasek's obligations under the guaranty were not "released, diminished or affected by (1) any act or omission" of Chase Bank.  Thus, the guaranty was not "extinguished" because loans were made when East-West was in default.

¶ 35    As to the allegations that Chase Bank failed to notify and concealed the East-West's defaults via the phony SOFA accounts, Mr. Wondrasek waived "all rights and benefits under any laws or statutes regarding sureties" and waived his right of notice of "any credit [Chase Bank] extends to [East-West] or "[East-West's] default *** or of any of the Liabilities which it might be entitled to by law or under any other agreement."  A waiver that is clear and unambiguous must be given effect according to its language.  *Morris v. Columbia National Bank of Chicago*, 79 B.R. 777, 782 (N.D.Ill.1987) (citing *Du Quoin State Bank v. Daulby*, 115 Ill. App. 3d 183, 185-86 (1983) and other Illinois cases).  This is true even where the guaranty agreement contains broad statements of guarantor liability.  *Daulby*, 115 Ill. App. 3d at 186.

¶ 36    Furthermore, as the guarantor, Mr. Wondrasek was responsible for keeping himself informed of "[East-West's] financial condition and assets, and of all other circumstances bearing upon the risk of nonpayment of the Liabilities," and he acknowledged that Chase Bank owed no duty to inform him of those risks or circumstances.  The Estate does not allege

that Mr. Wondrasek kept himself informed about East-West's financial dealing with the plaintiff or that Mr. Wondrasek ever contacted Chase Bank to determine the status of the loan to East-West. We find significant the absence of any allegation that Chase Bank provided Mr. Wondrasek with false information in response to any inquiry he made about the status of the line of credit extended to East-West.

¶ 37    The allegations in the extinguishment defense were insufficient to state a cause of action. Therefore, its dismissal was proper.

¶ 38                           2. *Equitable Estoppel*

¶ 39    The Estate argues that its allegations were sufficient to state the affirmative defense of equitable estoppel. The Estate alleged Mr. Wondrasek was prevented from discovering that Chase Bank continued to lend money to East-West even though East-West was in default because Chase Bank "purported" to create phony accounts in which to hide the defaults, thus preventing Mr. Wondrasek from discovering them.

¶ 40    "To establish equitable estoppel, the party claiming estoppel must demonstrate that: (1) the other person misrepresented or concealed material facts; (2) the other person knew at the time he or she made the representations that they were untrue; (3) the party claiming estoppel did not know the representations were untrue when they were made and when they were acted upon; (4) that the other person intended or reasonably expected that the party claiming estoppel would act upon the representations; (5) the party claiming estoppel reasonably relied upon the representations in good faith to his or her detriment; and (6) the party claiming estoppel would be prejudiced by his or her reliance on the representations if the other person is permitted to deny the truth thereof." *Geddes v. Mill Creek Country Club, Inc.*, 196 Ill. 2d 302, 313-14 (2001).

¶ 41 An estoppel may be based on a failure to disclose when coupled with an affirmative statement or act, misleading the party asserting estoppel but only when there is knowledge of the facts on one side and ignorance on the other. *Maniez v. Citibank, F.S.B.*, 404 Ill. App. 3d 941, 950 (2010). Whether an estoppel defense has been established is dependent on the facts of each case. *Maniez*, 404 Ill. App. 3d at 950.

¶ 42 The Estate failed to sufficiently allege that it was entitled to raise the defense of estoppel. Under the guaranty, it was Mr. Wondrasek's responsibility to keep informed of East-West's financial situation related to whether East-West would be able to repay its liabilities to Chase Bank and affecting the scope of Mr. Wondrasek's liability under the guaranty. In addition, under the guaranty, Mr. Wondrasek agreed that Chase Bank owed no duty to inform him of any information it possessed that concerned his risk as the guarantor.

¶ 43 " ' "A person is not estopped by his silence where there is no positive duty and opportunity to speak, or the party is in ignorance of his rights." ' " *Maniez*, 404 Ill. App. 3d at 950 (quoting *Town & Country Bank of Springfield v. James M. Canfield Contracting Co.*, 55 Ill. App. 3d 91, 95 (1977), quoting Sabin D. Puterbaugh, Illinois Chancery Pleading and Practice § 675, at 1372 (7th ed. 1930)). Chase Bank owed no duty to keep Mr. Wondrasek informed of East-West's borrowing and defaults.

¶ 44 Moreover, the Estate does not allege that Chase Bank made misrepresentations regarding East-West's defaults and the extensions of credit in response to Mr. Wondrasek's inquires, or even that Mr. Wondrasek made any inquires about the status of East-West's loans from Chase Bank. The Estate alleged in its counterclaims and amended affirmative defenses that Chase Bank created phony SOFA accounts to hide East-West's defaults. However, in its amended

counterclaims and second amended affirmative defenses, the Estate corrected that allegation by alleging that Chase Bank "did not actually create the so-called SOFA account."

¶ 45      Given the respective duties of the parties under the guaranty and the Estate's failure to allege facts to support its claim that Chase Bank concealed East-West's defaults from it, the dismissal of the affirmative defense of equitable estoppel was proper.

¶ 46                              3. *Breach of the Duty of Good Faith*

¶ 47      The Estate contends that the circuit court erred when it ruled that it had waived this defense under the language of the guaranty.  In Illinois, "a waiver of defense clause does not 'expressly disavow' the covenant of good faith implied into all contracts."  *Chemical Bank v. Paul*, 244 Ill. App. 3d 772, 782 (1993).

¶ 48      "Every contract implies good faith and fair dealing between the parties to it."  *Bank One, Springfield v. Roscetti*, 309 Ill. App. 3d 1048, 1059 (1999).  A bank has a duty of good faith in dealing with a guarantor.  *Roscetti*, 309 Ill. App. 3d at 1059.  The duty of good faith requires "the party vested with contractual discretion to exercise it reasonably, and he may not do so arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectation of the parties."  *Roscetti*, 309 Ill. App. 3d at 1059-60.  "A creditor has a good-faith obligation to inform the guarantor of facts known to the creditor that materially increase the guarantor's risk beyond that which the creditor has reason to believe the guarantor intended to assume, and which the creditor may reasonably believe are unknown to the guarantor."  *Roscetti*, 309 Ill. App. 3d at 1060.  Notwithstanding these principles, "parties to a contract are entitled to enforce its terms to the letter, and an implied covenant of good faith cannot overrule or modify the express terms of a contract."  *Roscetti*, 309 Ill. App. 3d at

1060. A guarantor may not rely on the covenant of good faith and fair dealing to read into a contract an obligation that does not exist. *Roscetti*, 309 Ill. App. 3d at 1060.

¶ 49       The Estate maintains that Chase Bank breached its duty of good faith and fair dealing when it continued to lend money to East-West, knowing that East-West could not repay the loans. It further maintains that Chase Bank breached its duty of good faith by hiding East-West's defaults in other accounts.

¶ 50       The duty of good faith and fair dealing does not alter the terms of the guaranty. Under the guaranty, it was Mr. Wondrasek's responsibility to keep apprised of East-West's financial state in order to ascertain his own risk as the guarantor, and he agreed that Chase Bank was not obligated to provide any information bearing on those risks to him. Finally, since the phone SOFA accounts were never created by Chase Bank, the Estate's claim that Chase Bank "hid" the defaults in these accounts lacks a factual basis.

¶ 51       We conclude that the Estate failed to sufficiently allege a breach of the duty of good faith and fair dealing by Chase Bank. The circuit court's dismissal of this affirmative defense was proper.

¶ 52                                          4. *Setoff*

¶ 53       In its amended affirmative defenses, the Estate alleged that it was entitled to a setoff in the amount it recovered on its common law and consumer fraud claims against any amount the Chase Bank recovered under the guaranty. The Estate argues that the circuit court erred when it dismissed its setoff claim under the guaranty's waiver of defenses provision. Chase Bank responds that the affirmative defense of setoff was properly dismissed because it should have been pleaded as a counterclaim. Chase Bank urges this court not to follow the decision in *Lake County Grading Co. of Libertyville, Inc. v. Advance Mechanical*

*Contractors, Inc.*, 275 Ill. App. 3d 452 (1995), wherein the Second District Appellate Court allowed an affirmative defense alleging a setoff to stand as a counterclaim.

¶ 54    Under section 2-613(d) of the Code, a party has the right to plead a defense based on affirmative matter which avoids or defeats the cause of action.  735 ILCS 5/2-613(d) (West 2010).  Counterclaims differ from affirmative defenses in that counterclaims seek affirmative relief whereas affirmative defenses attempt to defeat the cause of action.  *Dudek, Inc. v. Shred Pax Corp.*, 254 Ill. App. 3d 862, 871 (1993).  In *Dudek*, this court held that the plaintiff that raised setoffs as an affirmative defense did not lose the right to its claim of setoffs when it failed to plead them explicitly as counterclaims.  *Dudek*, 254 Ill. App. 3d at 871.

¶ 55    In this case, the Estate pleaded a setoff claim as an affirmative defense rather than one of its counterclaims.  We choose to address its dismissal in connection with the dismissal of the Estate's other counterclaims.

¶ 56                                  5. *Integration Clause*

¶ 57    The Estate argues that the circuit court erred when it ruled that the integration provision contained in the 2005 lending agreement between Chase Bank and East-West did not terminate Mr. Wondrasek's obligations under the guaranty.

¶ 58    Initially, we observe that in both its opening and reply brief, the Estate addressed the arguments and authorities relied on by Chase Bank but cited no authority supporting its argument that the integration clause in the 2005 credit agreement terminated its 2003 guaranty.  Illinois Supreme Court Rule 341(h)(7) (Ill. S. Ct. R. 341(h)(7) (eff. July 1, 2008)) requires a party to support its argument with citations to authority.  Failure to do so results in the forfeiture of the argument on appeal.  *In re Marriage of Hendry*, 409 Ill. App. 3d 1012,

1019 (2011). Forfeiture aside, we agree with the circuit court that the integration clause in the 2005 note did not terminate Mr. Wondrasek's 2003 guaranty.

¶ 59    The integration clause provided in pertinent part as follows:

"This agreement, the Notes, and any agreement related to the Credit Facilities embody the entire agreement and understanding between [Chase Bank] and [East-West] and supersede all prior agreements and understandings relating to their subject matter."

¶ 60    The inclusion of an integration clause in a contract manifests the parties' intention to protect themselves against misinterpretations which might arise from extrinsic evidence. *L.D.S., LLC, v. Southern Cross Food, Ltd.*, 2011 IL App (1st) 102379, ¶ 30. In *L.D.S., LLC*, the lease identified the parties to the lease as L.D.S. and Southern Cross, and the integration clause provided that the lease contract " 'contains all of the agreements *of the parties* hereto' (emphasis added)." *L.D.S., LLC*, 2011 IL App (1st) 102379, ¶ 32. The reviewing court determined that the "plain language of the integration clause is limited to agreements of the parties." Because the guarantor was not listed as a party to the lease, "the integration clause does not speak to any agreements made between him and either L.D.S. or Southern Cross." *L.D.S., LLC*, 2011 IL App (1st) 102379, ¶ 32.

¶ 61    In the present case, the 2005 credit agreement provided that it was between Chase Bank and East-West. The agreement defined credit facilities as "all extensions of credit" from Chase Bank to East-West, in existence now or in the future. "Notes" were defined as "all promissory notes, instruments and/or contracts evidencing the terms and conditions of any of the Credit Facilities."

18

¶ 62    The plain language of the 2005 credit agreement limits it to the agreements between the Chase Bank and East-West, which involve the extensions of credit and notes pertaining to the extensions of credit. Mr. Wondrasek was not a party to the 2005 credit agreement, the extensions of credit or the notes. Therefore, Mr. Wondrasek's guaranty was not terminated under the integration clause in the 2005 credit agreement. The circuit court correctly dismissed the Estate's termination defense.

¶ 63    Except for the setoff claim, the affirmative defenses were properly dismissed for failure to state a cause of action.

¶ 64                              III. Counterclaims

¶ 65    The Estate contends that the dismissal of its counterclaims for common law fraud and consumer fraud was error. In dismissing the counterclaims, the circuit court found that under the terms of the guaranty, Mr. Wondrasek agreed that any act or omission by Chase Bank was not a basis for releasing Mr. Wondrasek from his obligations under the guaranty. The Estate points out that an exculpatory clause cannot protect persons from the results of their willful and wanton misconduct. See *Zimmerman v. Northfield Real Estate, Inc.*, 156 Ill. App. 3d 154, 164-65 (1986); but see *RBS Citizens, National Ass'n v. RTG-Oak Lawn, LLC*, 407 Ill. App. 3d 183, 187 (2011) (reviewing court "would be inclined to find" that a waiver of defenses clause applied to common law fraud).

¶ 66                             A. Common Law Fraud

¶ 67    To state a claim for common law fraud, a party must allege the following elements: " '(1) a false statement of material fact; (2) by one who knows or believes it to be false; (3) made with the intent to induce action by another in reliance on the statement; (4) action by the other in reliance on the truthfulness of the statement; and (5) injury to the other resulting

from that reliance.' " *Benson v. Stafford*, 407 Ill. App. 3d 902, 921 (2010) (quoting *State Security Insurance Co. v. Frank B. Hall & Co.*, 258 Ill. App. 3d 588, 592 (1994)). Intentional concealment of a material fact is the equivalent of a false statement of material fact. *Zimmerman*, 156 Ill. App. 3d at 161. Where a person has a duty to speak, his failure to disclose material information constitutes fraudulent concealment. *Zimmerman*, 156 Ill. App. 3d at 161.

¶ 68 In support of its fraud counts, the Estate alleged that Chase Bank owed a duty to Mr. Wondrasek to disclose to him any risks that increased his obligations under the guaranty; that Chase Bank did not inform him of the risks; that Chase Bank concealed the risks from Mr. Wondrasek by moving East-West's loan balances into phony accounts; that Chase Bank intended Mr. Wondrasek to rely on its omissions and concealments; that Mr. Wondrasek did rely on the omissions and concealment and was actually deceived by them; and that Chase Bank's unfair and deceptive acts resulted in damage to Mr. Wondrasek.

¶ 69 The Estate failed to allege sufficient facts to establish a cause of action for common law fraud. The guaranty specifically provided that Chase Bank had no duty to provide information to Mr. Wondrasek bearing on the risks he assumed under the guaranty. In addition, Mr. Wondrasek agreed that Chase Bank did not have to notify him of any credit the plaintiff extended to East-West. Mr. Wondrasek accepted the responsibility of keeping informed of East-West's financial condition and the risks he assumed under the guaranty. Under the guaranty, Chase Bank owed no duty to speak.

¶ 70 The party must allege that its reliance was justified. *Benson*, 407 Ill. App. 3d at 921. To determine whether reliance was justified, the court considers the facts the party knew and those facts which it could have learned through ordinary prudence. *Benson*, 407 Ill. App. 3d

at 921. The Estate did not allege that Mr. Wondrasek made any effort to obtain information about the status of East-West's loan from either East-West or Chase Bank. Moreover, while the Estate alleged that Mr. Wondrasek was actually deceived by Chase Bank's alleged failure to disclose and alleged concealment of East-West's defaults, the Estate failed to allege that Mr. Wondrasek kept himself informed of the status of East-West's finances or sought information about the status of the loans from Chase Bank.

¶ 71       We conclude that the Estate failed to state a cause of action for common law fraud.

¶ 72                                    B. Consumer Fraud Act

¶ 73        "The elements of a cause of action brought pursuant to the Consumer Fraud Act are: (1) a deceptive act or practice by defendant, (2) an intent on the defendant's part that plaintiff rely on the deception, and (3) the deception occurred in the course of conduct involving trade or commerce." *Nilsson v. NBD Bank of Illinois*, 313 Ill. App. 3d 751, 764 (1999). While reliance on the part of the plaintiff is not an element of statutory consumer fraud, a claim must show that the consumer fraud proximately caused the plaintiff's injury. *Nilsson*, 313 Ill. App. 3d at 764.

¶ 74       Under the terms of the guaranty, Mr. Wondrasek agreed that Chase Bank had no duty to disclose to him information about the risk he had assumed in guarantying East-West's loan. See *RBS Citizens, National Ass'n*, 407 Ill. App. 3d at 192 (the defendants' claim under the Consumer Fraud Act that the calculation of the interest rate was deceptive and based on misrepresentations was rejected where the interest provision and the interest charged did not deviate from the terms of the note).

¶ 75       In support of its Consumer Fraud Act claim, the Estate alleged that Chase Bank employees developed a plan whereby Chase Bank could continue to lend money to East-

West, despite the fact East-West was in default, because it had Mr. Wondrasek's guaranty. To prevent Mr. Wondrasek from terminating his guaranty, Chase Bank:

> "came up with the plan to move the borrowing that was causing the default under the Borrowing Base into the dummy SOFA account.

> 24. [Chase Bank] internally approved the plan and, as a result, internally made the default seem to disappear. Yet, the Bank did not actually create or document the so-called 'SOFA' account. As a result, it was a complete fiction that the Bank used to cover-up East-West's default under the Line of Credit and thereby, justify giving more and more money to a borrower that the Bank knew it could never repay it.

> 25. By setting up the phony account to conceal East-West's Borrowing Base defaults, the Bank materially increased Wondrasek's risk under the Guaranty. As such the Bank had a duty to disclose this material increase that the Bank itself had created."

¶ 76    According to the allegations in the Estate's counterclaims and amended affirmative defenses, the alleged deception was to conceal East-West's defaults from Mr. Wondrasek by creating the phony SOFA accounts. But in its amended counterclaims and second amended affirmative defenses, the Estate then corrected the allegation to allege that the phony SOFA accounts were never created. The Estate failed to make a sufficient showing that Chase Bank's plan to deceive Mr. Wondrasek by creating phony SOFA accounts constituted a deceptive act or practice since the accounts were never created. The Estate further failed to make a sufficient showing that the alleged deceptive acts were a proximate cause of his injury, *i.e.*, his liability under the guaranty.

¶ 77     The Estate failed to state a cause of action for common law fraud or for violation of the Consumer Fraud Act.  We conclude that the dismissal of the counterclaims was proper. Therefore, the Estate was not entitled to a setoff based on these claims, and the dismissal of the setoff affirmative defense was proper

¶ 78                                   IV. Summary Judgment

¶ 79     The Estate contends that the circuit court erred when it denied its motion to strike two affidavits in support of Chase Bank's motion for judgment and granted summary judgment to the plaintiff.

¶ 80                                   A. Standards of Review

¶ 81     We review a circuit court's ruling on a motion to strike an affidavit in conjunction with a motion for summary judgment and its ruling on the motion for summary judgment *de novo*. *Collins v. St. Paul Mercury Insurance Co.*, 381 Ill. App. 3d 41, 46 (2008); *Wolinsky v. Kadison*, 2013 IL App. (1st) 111186, ¶ 48; but see *American Service Insurance Co. v. China Ocean Shipping Co. (Americas), Inc.*, 402 Ill. App. 3d 513, 524 (2010) (applying the abuse of discretion standard to review of the striking of an affidavit in a summary proceeding). The determination of whether business records are admissible is within the sound discretion of the circuit court, and its determination will not be reversed absent an abuse of discretion. *Bank of America, N.A. v. Land*, 2013 IL App (5th) 120283, ¶ 13.  An abuse of discretion occurs only where the court's ruling is arbitrary, fanciful or unreasonable, or where no reasonable person would take the view adopted by the trial court.  *TruServ Corp. v. Ernst & Young LLP*, 376 Ill. App. 3d 218, 227 (2007).

¶ 82                                B. Discussion

¶ 83        In general, the liability of a guarantor is limited by that of the debtor and if no recovery

could be had against the debtor, the guarantor would be absolved of liability. *Hensler v.*

*Busey Bank*, 231 Ill. App. 3d 920, 927 (1992). "Where under the conditions of the contract

no liability has arisen on the part of the principal, there is no liability on the guarantor."

*Hensler*, 231 Ill. App. 3d at 927.

¶ 84        The Estate contends that the affidavits of Joseph Patek, a Chase Bank vice-president, and

Brenda Pawlak, an analyst with Chase Bank, were inadmissible and should have been

stricken. In the absence of the affidavits, it submits there was no foundation for the

admission of the documents evidencing East-West's indebtedness to Chase Bank, and the

motion for summary judgment should have been denied.

¶ 85        In support of its motion for summary judgment, Chase Bank submitted a number of

documents to establish the amount East-West was indebted to the plaintiff, including: the

2003 line of credit note, the guaranty, the loan history and the payoff-amount. In order to

provide a foundation for the admission of these documents, Chase Bank submitted the

affidavits of Mr. Patek and Ms. Pawlak. Both Mr. Patak and Ms. Pawlak averred that they

had personal knowledge of the facts contained in their affidavits and were competent to

testify to those facts.

¶ 86        In his affidavit, Mr. Patak averred as follows. Since 2004, he had been a vice-president

of Chase Bank; since 2008, he had been primarily responsible for the collection of the East-

West's indebtedness to Chase Bank. In connection with his responsibilities for the collection

of East-West's indebtedness, he reviewed the loan and credit files of East-West's

indebtedness maintained by Chase Bank. To the best of his knowledge, Chase Bank was the

holder of the note, the credit extension agreements, and the guaranty. Mr. Patek further averred that he had possession of the original note and the guaranty and that pursuant to the 2007 note modification agreement, the maturity date of indebtedness was extended to and included February 28, 2008. As of that date, neither East-West nor Mr. Wondrasek had satisfied the indebtedness.

¶ 87    In her affidavit, Ms. Pawlak averred as follows. From 2004 to the present, she was employed by Chase Bank. From 2004 to 2007, she was a project II manager and was responsible for coordinating process changes affecting the servicing of commercial loans, and from 2007 to 2009, she was employed as a business and reporting analyst, responsible for generating summary and exception reports for the commercial loan services staff. From 2009 to the present, she was employed as a quality assurance analyst, serving as a liaison for the commercial loan services department for internal audit reviews and performing sample testing on processes and controls used in that department.

¶ 88    In the capacity of her employment by the plaintiff, Ms. Pawlak had access to and was generally familiar with Chase Bank's commercial bank business records maintained in the regular course of business, including the business records relating to East-West and its indebtedness to the plaintiff. Her affidavit was based on her review of Chase Bank's records relating to the loan to East-West including, but not limited to, the payoff calculation document, and her own personal knowledge of how Chase Bank's records were maintained.

¶ 89    Ms. Pawlak stated that the loan records and the payoff calculation document were maintained by Chase Bank in the course of its regularly conducted business activities. Chase Bank maintained its loan records by logging in entries at or near the time of a recordable

event by a person with knowledge or from information transmitted from a person with knowledge of the event.

¶ 90    Through her employment with Chase Bank, Ms. Pawlak was familiar with the computer equipment Chase Bank used to maintain balance information, record payments and to compute interest and cost charges. From 2003 to November 2006, Chase Bank used the "Automated Financial Software," and from December 1, 2006 to the present, Chase Bank used the "Advanced Commercial Banking System" (ACBS) software to perform those functions. Ms. Pawlak explained the process of imputing the terms of Chase Bank's commercial loans into the computer and how variable rate interest was adjusted in the computer. Payment information was imputed to the computer by Chase Bank employees on the day the payment arrived or, at the latest, the next business day. It has been Chase Bank's business practice to periodically review and audit entries into the computer to eliminate potential errors and to correct inadvertent erroneous entries.

¶ 91    The payoff calculation document was generated on June 21, 2011, by the ACBS software and utilized by Chase Bank employees in the regular course of business. According to the document, the loan balance was $1,562,319.71 and the unpaid interest through June 21, 2011, was $321,870.40.

¶ 92    The basic rules of evidence require that a proper foundation be laid for the introduction of a document into evidence. *Piser v. State Farm Mutual Automobile Insurance Co.*, 405 Ill. App. 3d 341, 348 (2010). There must be evidence demonstrating that the document is what the party offering it claims it to be. *Piser*, 405 Ill. App. 3d at 348-49. Generally, the party offering the document establishes its identity through the testimony of a witness who has

sufficient personal knowledge to satisfy the trial court that the document is what it claims to be. *Piser*, 405 Ill. App. 3d at 349.

¶ 93    An affidavit may also serve to authenticate a document. *Piser*, 405 Ill. App. 3d at 349; see *Robidoux v. Oliphant*, 201 Ill. 2d 324, 335-36 (2002) (an affidavit submitted in a summary judgment proceeding serves as a substitute for testimony at trial). In order to insure that the trial court bases its decision on valid evidentiary facts, there must be strict compliance with Illinois Supreme Court Rule 191(a) (Ill. S. Ct. R. 191(a) (eff. July 1, 2002)). *Robidoux*, 201 Ill. 2d at 336. Rule 191(a) provides in pertinent part as follows:

> "Affidavits in support of and in opposition to a motion for summary judgment *** shall be made on the personal knowledge of the affiants; shall set forth with particularity the facts upon which the claim, counterclaim, or defense is based; shall have attached thereto sworn or certified copies of all documents upon which the affiant relies; shall not consist of conclusions but of facts admissible in evidence; and shall affirmatively show that the affiant, if sworn as a witness, can testify competently thereto." Ill. S. Ct. R. 191(a) (eff. Jan. 4, 2013).

¶ 94    The Estate points out that since Mr. Patek did not become personally involved with Chase Bank's loan to East-West until 2008, he lacked the necessary personal knowledge of the facts stated in his affidavit. Since Mr. Patak's affidavit was inadmissible, his affidavit could not provide the foundation for the admission of the loan documents.

¶ 95    "In order to fulfill the foundational requirements of a business record, it is not necessary that the author or creator of the record testify or be cross-examined about the contents of the record." *Troyan v. Reyes*, 367 Ill. App. 3d 729, 733 (2006). The custodian or any other person familiar with the business and its mode of operation may provide testimony for

27

establishing the foundational requirements of a business record. *Troyan*, 367 Ill. App. 3d at 733. The fact that the author of the record does not testify affects only the weight, not the admissibility of the record. *Troyan*, 367 Ill. App. 3d at 733 (citing Illinois Supreme Court Rule 236 (eff. Aug. 1, 1992)). Moreover, " '[i]f, from the document as a whole, it appears that the affidavit is based upon the personal knowledge of the affiant and there is a reasonable inference that the affiant could competently testify to its contents at trial, Rule 191 is satisfied.' " *Doria v. Village of Downers Grove*, 397 Ill. App. 3d 752, 756 (2009) (quoting *Kugler v. Southmark Realty Partners III*, 309 Ill. App. 3d 790, 795 (1999)).

¶ 96    In *National Builders Bank of Chicago v. Simons*, 307 Ill. App. 562 (1940), the reviewing court upheld the denial of a motion to strike an affidavit for lack of personal knowledge. The bank official's affidavit was predicated on facts well within his knowledge and that of the bank and on the records of the transaction and the events following it, which were in the bank's possession. *Simons*, 307 Ill. App. at 567. In *Tague v. Autobarn Motors, Ltd.*, 394 Ill. App. 3d 268 (2009), the trial court granted a motion to dismiss based on an expired warranty. In affirming the dismissal, the reviewing court determined that the affidavit of the defendant's employee in support of the motion complied with Rule 191(a). In the affidavit, the employee averred that he was responsible for the review of all warranty claims, including all factual histories related to the claim. He set forth his review of the warranty on the plaintiff's vehicle and established that it was the same warranty upon which the dismissal was based and had expired prior to the time the cause of action arose. See *Tague*, 394 Ill. App. 3d at 276.

¶ 97    Mr. Patek's averments were sufficient to establish his personal knowledge. His position as vice-president of Chase Bank provided him with familiarity with Chase Bank's loan

operations. While he was not in charge of the efforts to collect the unpaid balance from East-West until 2008, as part of his responsibilities, Mr. Patek reviewed all the documents relating to the line of credit loan from Chase Bank to East-West, including those which predated his taking over the collection of East-West's indebtedness to Chase Bank. We hold that Mr. Patek's affidavit was sufficient to authenticate the loan documents and laid the necessary foundation for their admission.

¶ 98   Next, the defendant argues that that the computer-generated payoff calculation document failed to comply with Illinois Rules of Evidence 803(6) (Ill. R. Evid. 803(6) (eff. Ap. 26, 2012)) for admission into evidence. Rule 803 provides in pertinent part as follows:

> "The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
>
> * * *
>
> **(6) Records of Regularly Conducted Activity.** A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record or data compilation, all as shown by the testimony of the custodian or other qualified witness *** unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness , but not including in criminal cases medical records." Ill. R. Evid. 803(6) (eff. Ap. 26, 2012).

¶ 99   We observe first that the adoption of the Illinois Rules of Evidence relating to the admission of business records did not make any substantive changes to the requirements

under Illinois Supreme Court Rule 236 (Ill. S. Ct. R. 236 (eff. Aug. 1, 1992)).  See *Village of Arlington Heights v. Anderson*, 2011 IL App (1st) 110748, ¶ 17 (reviewing court recognized that while Rule 803(8), providing for the admission of public records, was new, the legal principles behind it were not). Therefore, case law developed under Rule 236 continues to be relevant to our review of this issue.

¶ 100      The payoff calculation document was generated by a computer.  With a proper foundation, a computer-generated business record is admissible under the business records exception to the hearsay rule.  *People v. Lombardi*, 305 Ill. App. 3d 33, 42 (1999).  In order for the record to be admitted into evidence, it must be shown that " '(1) the electronic computing equipment is recognized as standard; (2) the input is entered in the regular course of business reasonably close in time to the happening of the event recorded; and (3) the foundation testimony establishes that the sources of the information, method and time of preparation indicate its trustworthiness and justify its admission.' "  *Lombardi*, 305 Ill. App. 3d at 42 (quoting *People v. Bynum*, 257 Ill. App. 3d 502, 512 (1994)).  The ultimate issue is whether the foundation sufficiently guarantees trustworthiness to justify introduction into evidence.  *Lombardi*, 305 Ill. App. 3d at 43.

¶ 101      The Estate contends that the payoff calculation document failed to comply with the requirements of Rule 803(6).  The Estate argues that the document was not made at or near the time of the events it reflected.  The Estate's argument is belied by the record.  The payoff calculation document was dated June 21, 2011, and set forth the amount necessary to satisfy East-West's indebtedness to Chase Bank as of that date.   In her affidavit, Ms. Pawlak averred that the payoff document was created on June 21, 2011.

¶ 102     The Estate points out that the payoff calculator document was not created by a person but by a computer, but none of the people who imputed the information into the computer were identified by Ms. Pawlak, or shown to have personal knowledge of the information they imputed into the computer.   Rule 803(6) did not require Ms. Pawlak to name each individual who input information into the computer and to provide the source of that person's information   Ms. Pawlak averred that the loan records and the payoff calculation document were maintained by Chase Bank in the course of its regularly conducted business activities. Chase Bank maintained its loan records by logging in entries at or near the time of a recordable event by a person with knowledge or from information transmitted from a person with knowledge of the event.   Ms. Pawlak's averments in this regard satisfied Rule 803(6). See *Lombardi*, 305 Ill. App. 3d at 43 (even without evidence that the computer was standard, testimony that the computer was used in the industry, that the information was immediately entered by tellers or automatic teller machines and stored in the mainframe computer and that the records were kept in the ordinary course of business and subject to auditing, was sufficient to establish trustworthiness of the information).

¶ 103     Next, the Estate points out that the payoff calculator document did not refer to the other loan documents and the payoff calculator document was not produced in discovery.  The payoff calculator document was not a summary of Chase Bank's line of credit loan to East-West from 2003 to 2007.  It provides only how the amount necessary to satisfy the outstanding loan and interest balance as of June 21, 2011, was calculated.  The fact that the payoff calculator document did not refer to the other loan documents or was not produced in discovery with the other loan documents did not render it inadmissible under Rule 803(6). As Ms. Pawlak averred, it was produced in the ordinary course of Chase Bank's business

based on information recorded by employees with the knowledge or transmitted by an employee with knowledge of the information.

¶ 104     The Estate points out that Ms. Pawlak did not state that she was the custodian of the payoff calculator document and that the document only served to summarize evidence that was never presented.   Rule 803(6) requires the testimony of the custodian or *other qualified witness*.  Ms. Pawlak's averments in her affidavit established that she was a qualified witness to establish the foundation for the admission of the payoff calculator document into evidence. We reiterate that the payoff calculator document was not a summary of the line of credit loan.

¶ 105     We conclude that the affidavits of Mr. Patek and Ms. Pawlak were admissible to establish the necessary foundations for the admission of the loan documents and the payoff calculator document.  Therefore, the circuit court did not err in denying the Estate's motion to strike.

¶ 106     In challenging the grant of summary judgment, the Estate contended only that the circuit court erred in dismissing its affirmative defenses and counterclaims and that the court relied on inadmissible evidence.  Apart from those claims, the Estate did not argue that a genuine issue of material fact existed or that Chase Bank was not entitled to judgment as a matter of law.  In light of our determination that the Estate's affirmative defenses and counterclaims were properly dismissed and that the circuit court did not rely on inadmissible evidence in granting summary judgment, the grant of summary judgment to Chase Bank was proper.

¶ 107                                    V. Discovery Costs

¶ 108     The Estate contends that the circuit court erred by assessing it $3,025.80 toward Chase Bank's costs in producing electronically stored documents in response to Mr. Wondrasek's and/or the Estate's discovery requests.  The Estate maintains that the court lacked authority to

assess costs against it and, in effect, imposed a sanction without any misconduct on the Estate's part.

¶ 109                                A. Standard of Review

¶ 110      Trial courts' rulings on discovery matters are generally reviewed for an abuse of discretion. *Payne v. Hill*, 2013 IL App (1st) 113519, ¶ 13.  A reviewing court will uphold a trial court's decision on a protective order unless the trial court has abused its discretion. *Payne*, 2013 IL App (1st) 113519 ¶ 12.  "A court abuses its discretion only if it acts arbitrarily, without the employment of conscientious judgment, exceeds the bounds of reason and ignores recognized principles of law; or if no reasonable person would take the position adopted by the court." *Payne*, 2013 IL App (1st) 113519, ¶ 12.

¶ 111                                B. Discussion

¶ 112      The pertinent facts from the record reveal that the Estate filed motions to compel Chase Bank to produce documents which Chase Bank maintained were electronically stored and would be costly to produce.   Chase Bank requested that discovery not go forward until the parties were at issue on the pleadings.  On December 10, 2009, the circuit court entered an order granting the Estate's motion to compel, in part, and ordering the parties to confer as to the scope of the production.  The court also reserved the issue of allocating the cost of the production.

¶ 113      Following the circuit court's dismissal of the Estate's affirmative defenses, Chase Bank filed a motion pursuant to Illinois Supreme Court Rule 201(c) (Ill. S. Ct. R. 201(c)(1) (eff. July 1, 2002)) for reimbursement of the costs incurred in producing the electronically-stored documents.  In support of the motion, Chase Bank alleged that the Estate opposed the request for a stay and insisted on going forward with discovery.  Chase Bank sought $18,771.39 in

33

attorney fees, costs and expenses related to the location, restoration, retrieval and production of the documents. Following the dismissal of the Estate's counterclaims and amended affirmative defenses, the circuit court ordered the Estate to pay $3,025.80 in costs to Chase Bank.

¶ 114    The Estate maintains that parties bear the cost of complying with discovery requests, and therefore, Judge Goldberg had no authority to assess the discovery costs against it. The Estate overlooks the provisions of Rule 201(c). Rule 201(c) provides in pertinent part as follows:

> "(1) *Protective Orders*. The court may at any time on its own initiative, or on motion of any party or witness, make a protective order as justice requires, denying, limiting, conditioning, or regulating discovery to prevent unreasonable annoyance, expense, embarrassment, disadvantage, or oppression." Ill. S. Ct. R. 201(c)(1) (eff. Jan. 1, 2013).

¶ 115    Protective orders are among the tools the circuit courts may use in order to oversee and prevent harassment during discovery. *Hall v. Sprint Spectrum L.P.*, 368 Ill. App. 3d 820, 823 (2006). The nature of a protective order depends on the facts of the case; proper use of the rule requires flexible application. *Hall*, 368 Ill. App. 3d at 823. The circuit court is in the best position to weigh the competing needs and interests of the parties affected by the protective order. *Hall*, 368 Ill. App. 3d at 823.

¶ 116    Judge Goldberg entered an order granting the defendant's motion to compel discovery in part. In light of the plaintiff's concerns as to the expense and necessity of the discovery prior to the parties being at issue on the pleadings, the judge further ordered the parties to confer on the scope of the production and reserved the allocation of costs. After the Estate's

affirmative defenses were dismissed twice, Judge Goldberg ordered that the Estate pay $3,025.80 of the $18,000 in discovery costs claimed by Chase Bank.

¶ 117    The record established that Judge Goldberg acted within his authority under Rule 201(c) to balance the Estate's need for the discovery material against the expense of production incurred by Chase Bank.   Moreover, the Estate failed to address let alone provide any argument that Rule 201(c) did not apply in this case.

¶ 118    We conclude that the circuit court did not abuse its discretion when it ordered the Estate to pay a portion of Chase Bank's electronic discovery costs.

¶ 119                                        CONCLUSION

¶ 120    For all of the foregoing reasons, we affirm the judgment of the circuit court.

¶ 121    Affirmed.

¶ 122

¶ 123

¶ 124      The pertinent facts from the record reveal that the Estate filed motions to compel Chase Bank to produce documents which Chase Bank maintained were electronically stored and would be costly to produce.   Chase Bank requested that discovery not go forward until the parties were at issue on the pleadings.  On December 10, 2009, the circuit court entered an order granting the Estate's motion to compel, in part, and ordering the parties to confer as to the scope of the production.  The court also reserved the issue of allocating the cost of the production.

¶ 125      Following the circuit court's dismissal of the Estate's affirmative defenses, Chase Bank filed a motion pursuant to Illinois Supreme Court Rule 201(c) (Ill. S. Ct. R. 201(c)(1) (eff. July 1, 2002)) for reimbursement of the costs incurred in producing the electronically-stored documents.  In support of the motion, Chase Bank alleged that the Estate opposed the request for a stay and insisted on going forward with discovery.  Chase Bank sought $18,771.39 in attorney fees, costs and expenses related to the location, restoration, retrieval and production of the documents.  Following the dismissal of the Estate's counterclaims and amended affirmative defenses, the circuit court ordered the Estate to pay $3,025.80 in costs to Chase Bank.

¶ 126      The Estate maintains that parties bear the cost of complying with discovery requests, and therefore, Judge Goldberg had no authority to assess the discovery costs against it.  The

Estate overlooks the provisions of Rule 201(c). Rule 201(c) provides in pertinent part as follows:

> "(1) *Protective Orders*. The court may at any time on its own initiative, or on motion of any party or witness, make a protective order as justice requires, denying, limiting, conditioning, or regulating discovery to prevent unreasonable annoyance, expense, embarrassment, disadvantage, or oppression." Ill. S. Ct. R. 201(c)(1) (eff. Jan. 1, 2013).

¶ 127     Protective orders are among the tools the circuit courts may use in order to oversee and prevent harassment during discovery. *Hall v. Sprint Spectrum L.P.*, 368 Ill. App. 3d 820, 823 (2006). The nature of a protective order depends on the facts of the case; proper use of the rule requires flexible application. *Hall*, 368 Ill. App. 3d at 823. The circuit court is in the best position to weigh the competing needs and interests of the parties affected by the protective order. *Hall*, 368 Ill. App. 3d at 823.

¶ 128     Judge Goldberg entered an order granting the defendant's motion to compel discovery in part. In light of the plaintiff's concerns as to the expense and necessity of the discovery prior to the parties being at issue on the pleadings, the judge further ordered the parties to confer on the scope of the production and reserved the allocation of costs. After the Estate's affirmative defenses were dismissed twice, Judge Goldberg ordered that the Estate pay $3,025.80 of the $18,000 in discovery costs claimed by Chase Bank.

¶ 129     The record established that Judge Goldberg acted within his authority under Rule 201(c) to balance the Estate's need for the discovery material against the expense of production incurred by Chase Bank. Moreover, the Estate failed to address let alone provide any argument that Rule 201(c) did not apply in this case.

¶ 130    We conclude that the circuit court did not abuse its discretion when it ordered the Estate to pay a portion of Chase Bank's electronic discovery costs.

¶ 131                                    CONCLUSION

¶ 132    For all of the foregoing reasons, we affirm the judgment of the circuit court.

¶ 133    Affirmed.

¶ 134

¶ 136

¶ 137

¶ 138     Abe

¶ 139     Abe

¶ 140     Abe

¶ 141     Abe

¶ 142

¶ 144

i

ii